FLUMIGNAN v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 64554. Submitted May 16, 1983, at Detroit.—Decided
December 19, 1983. Leave to appeal applied for.

John C. Flumignan and his wife, Ida M. Flumignan, were in-
formed by Detroit Automobile Inter-Insurance Exchange, their
no-fault automobile insurer, that their insurance would be
renewed only if Ida Flumignan was excluded from coverage or
if the Flumignans agreed to pay higher premiums. DAIIE
imposed these conditions because Ida Flumignan had been
involved in three accidents, in which she struck other vehicles,
within a period of five months. The Flumignans refused to
accept the terms imposed by DAIIE and their insurance cover-
age was terminated. The Flumignans filed suit against DAIIE
in Macomb Circuit Court challenging the constitutionality of
the essential insurance act and specifically those provisions of
the act which permit automobile no-fault insurers to cancel
insurance policies if the insurer determines that the insured
has been at fault in two or more motor vehicle accidents in the
three years preceding application for renewal of a policy.
Plaintiffs contended that the act was unconstitutional because
it allowed termination of coverage without due process of law.
The trial court, John G. Roskopp, J., found that plaintiffs were
entitled to due process of law before their insurance could be
terminated and ruled that the plaintiffs were entitled to a
judicial determination of fault before eligibility points for mo-
tor vehicle accidents could be assessed and their insurance
terminated. Defendants appealed. *Held:*

The procedures provided in the essential insurance act for
administrative review of the insurer's decision to assess eligibil-
ity points and to terminate insurance coverage along with the
post-termination remedies including an administrative eviden-
tiary hearing and judicial review of the agency decision satisfy

REFERENCES FOR POINTS IN HEADNOTES
[1] 16A Am Jur 2d, Constitutional Law § 815.
[2, 6] 7 Am Jur 2d, Automobile Insurance §§ 36, 40.
[3] 16A Am Jur 2d, Constitutional Law §§ 827, 828.
[4, 5] 16A Am Jur 2d, Constitutional Law §§ 839, 855-857.

the requirements of due process of law. The judgment of the circuit court is reversed.

Reversed.

T. M. Burns, P.J., dissented. He believes that the true issue in this case is whether the insured is entitled to notice and a fair determination of whether he is substantially at fault in an auto accident, not, as the majority states, whether due process requires a judicial determination of fault prior to the assessment of insurance eligibility points for accidents in which the insured is found to be substantially at fault by the insurer. He agrees with the trial court's finding that the provision of the act regarding the insurer's determination of whether the insured is substantially at fault in an auto accident lacks sufficient safeguards to satisfy the requirements of due process of law. He believes the act is unconstitutional, and he would affirm the judgment of the trial court.

OPINION OF THE COURT

1. CONSTITUTIONAL LAW — DUE PROCESS — PRIVATE PROPERTY.

There are three distinct factors which must be considered in determining whether the specific dictates of due process have been met in any situation in which there is a deprivation of a private property interest by state action: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

2. INSURANCE — NO-FAULT INSURANCE — TERMINATION OF INSURANCE — DUE PROCESS.

The procedures provided in the essential insurance act for administrative review of a no-fault automobile insurer's decision to assess eligibility points and to terminate insurance coverage, along with the post-termination remedies including an administrative evidentiary hearing and judicial review of the agency decision, satisfy the requirements of due process of law; a revocation or refusal to renew a policy of insurance based upon the insured's involvement in automobile accidents without a prior judicial determination of fault does not deprive the insured of his state and federally guaranteed right to due process of law (MCL 500.2101 et seq.; MSA 24.12101 et seq.).

DISSENT BY T. M. BURNS, P.J.

3. CONSTITUTIONAL LAW — DUE PROCESS — NOTICE.

   *The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and an opportunity to meet it.*

4. CONSTITUTIONAL LAW — DUE PROCESS.

   *A hearing before an unbiased and impartial decisionmaker is a basic requirement of due process.*

5. CONSTITUTIONAL LAW — DUE PROCESS — BIAS OF DECISIONMAKER.

   *A judge or decisionmaker is disqualified on the basis of due process from hearing a case without a showing of actual bias where the judge or decisionmaker: (1) has a pecuniary interest in the outcome of the case, (2) has been the target of personal abuse or criticism from the party before him, (3) is enmeshed in other matters involving the parties, or (4) might have pre-judged the case because of prior participation as an accuser, investigator, fact finder, or initial decisionmaker.*

6. INSURANCE — NO-FAULT INSURANCE — TERMINATION OF INSURANCE — DUE PROCESS.

   *A revocation or refusal to renew a policy of insurance based upon the insured's involvement in automobile accidents without a prior judicial determination of fault deprives the insured of his state and federally guaranteed right to due process of law.*

*John C. Carlisle,* for plaintiffs.

*Glime, Daoust, Wilds, Rusing & Widlak* (by *Herbert J. Rusing),* for defendant.

Before: T. M. BURNS, P.J., and D. F. WALSH and C. W. SIMON,* JJ.

D. F. WALSH, J. This appeal concerns the constitutionality of Michigan's essential insurance act (EIA), MCL 500.2101 *et seq.;* MSA 24.12101 *et seq.,* and specifically those provisions of the EIA which permit automobile no-fault insurers to cancel insurance policies if the insurer determines that the insured has been at fault in two or more motor

* Circuit judge, sitting on the Court of Appeals by assignment.

vehicle accidents in the three years preceding application for renewal of a policy. The circuit court ruled that a revocation or refusal to renew a policy of insurance based upon the insured's involvement in automobile accidents without a prior judicial determination of fault deprives the insured of his state and federally guaranteed right to due process of law. Defendant appeals and we reverse.

The EIA requires that no-fault insurance be provided to an "eligible person". MCL 500.2118(1); MSA 24.12118(1). "Eligible person" is defined as an owner or registrant of a licensed vehicle or a licensed driver, MCL 500.2103(1); MSA 24.12103(1). However, a person who has accumulated too many "insurance eligibility points" in the three years preceding application for or renewal of a no-fault policy is excepted from the definition of "eligible person". MCL 500.2103(1)(h); MSA 24.12103(1)(h).

Insurance eligibility points are assessed for convictions, civil infractions, or findings of responsibility in probate court. MCL 500.2103(4); MSA 24.12103(4). A schedule is provided in § 2103(4) of the statute, detailing the number of points which can be assessed for each driving incident. Concerning motor vehicle accidents, points are assessed after the insurer determines that the insured was "substantially at-fault" in the accident. "Substantially at-fault" means more than 50% at fault. MCL 500.2103(4), 500.2104(4); MSA 24.12103(4), 24.12104(4).

Three points are assessed for the first "substantially at-fault" accident. For the second and each subsequent accident in which the insured has been determined to be substantially at fault, four points are given. If application for a renewal of a no-fault policy occurred on or before December 31, 1982,

the insurer could decline or terminate coverage if the insured had accumulated five eligibility points within the three previous years. For applications or renewals occurring after January 1, 1983, an accumulation of six eligibility points would be required to justify a refusal or termination of insurance. MCL 500.2103(1)(h); MSA 24.12103(1)(h).

Between June 27 and November 11, 1980, plaintiff Ida Flumignan was involved in three automobile accidents. In two accidents, she struck parked vehicles. In the third, she struck the rear end of a vehicle as it was leaving a parking lot. Plaintiffs were provided with no-fault insurance by defendant during the period in which the accidents occurred. They were subsequently notified that their insurance would be renewed only if Mrs. Flumignan was excluded from coverage or if the plaintiffs agreed to pay higher premiums. Such terms were not acceptable to plaintiffs and defendant opted to terminate coverage. Plaintiffs were notified that their insurance would be terminated June 10, 1981, because Mrs. Flumignan had incurred 11 eligibility points as a result of the three accidents.

On June 2, 1981, plaintiffs commenced the present action, contending that the EIA was unconstitutional because it allowed termination of coverage without due process of law. Thereafter, defendant moved for summary judgment under GCR 1963, 117.2(1). The circuit court judge found that plaintiffs were entitled to due process of law before their insurance could be terminated. Specifically, the judge ruled that the plaintiffs were entitled to a judicial determination of fault before eligibility points for motor vehicle accidents could be assessed and their insurance terminated.

Defendant raises primarily three arguments on

appeal: (1) that the plaintiffs have no property interest in no-fault insurance; (2) that no state action was involved in the attempted termination of plaintiff's insurance; and (3) that the procedures in the EIA satisfy the requirements of due process of law. Since we are persuaded that defendant's third argument is meritorious, we will assume without deciding, for purposes of the following discussion, that the necessary state action and property interest are present.

The United States Supreme Court has consistently held that "some form of hearing is required before an individual is finally deprived of a property interest" and that the "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner' ". *Mathews v Eldridge,* 424 US 319, 333; 96 S Ct 893; 47 L Ed 2d 18 (1976), citing *Armstrong v Manzo,* 380 US 545; 85 S Ct 1187; 14 L Ed 2d 62 (1965). The issue presented in this appeal is whether due process requires a judicial determination of fault *prior* to the assessment of insurance eligibility points for accidents in which the insured is found to be "substantially at-fault" by the insurer.

In *Mathews v Eldridge, supra,* the United States Supreme Court considered virtually the same issue in a slightly different factual setting and ruled that a prior evidentiary hearing was not required. We find that the Supreme Court's ruling in *Mathews* is dispositive of this appeal.

In *Mathews* a state agency determined that George Eldridge, a recipient of disability insurance benefits under the Social Security Act, was no longer disabled and pursuant to that determination the social security administration terminated benefits. Eldridge brought an action in the United

States District Court for the Western District of Virginia claiming that the administrative procedures established by the Secretary of Health, Education and Welfare for assessing whether a continuing disability existed were insufficient to satisfy the requirements of due process. Both the district court and United States Court of Appeals for the Fourth Circuit agreed, holding that prior to termination of benefits the recipient had to be afforded an evidentiary hearing. The United States Supreme Court reversed, ruling that due process does not always require a predeprivation evidentiary hearing. *Mathews, supra,* 424 US 349. See also *Parratt v Taylor,* 451 US 527, 538; 101 S Ct 1908; 68 L Ed 2d 420 (1981). In so ruling the Court reviewed the recent cases in which the Court had had the opportunity of considering "the extent to which due process requires an evidentiary hearing prior to the deprivation of some type of property interest even if such a hearing is provided thereafter" and noted that "[i]n only one case, *Goldberg v Kelly,* 397 US 266-271; 90 S Ct 1011; 25 L Ed 2d 287 (1970), has the Court held that a hearing closely approximating a judicial trial is necessary". *Mathews, supra,* 424 US 333. The Court further reflected that its prior decisions reaffirm the truism that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands". *Mathews, supra,* 424 US 334, citing *Morrissey v Brewer,* 408 US 471, 481; 92 S Ct 2593; 33 L Ed 2d 484 (1972).

Finally, the Court in *Mathews* identified three distinct factors which must be considered in determining whether the specific dictates of due process have been met in any situation in which there is a deprivation of a private property interest by state action. The factors identified are as follows:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 US 335.

In order to apply these factors to the case before us, it is necessary that the relevant EIA procedures be examined and evaluated.

Under § 2123(1) of the statute, notice of nonrenewal must be provided no later than 30 days before the insurance is to expire. The notice must declare the reason for the termination and advise the insured of his rights under §§ 2113 and 2114 of the act. Under § 2113, the insured has a right to an informal conference with the insurer. The insurer must establish reasonable internal procedures to provide the insured with the information pertinent to the denial of insurance and a method for resolving the dispute promptly and informally, while protecting the interests of both the insurer and the insured. MCL 500.2113(2); MSA 24.12113(2). If the informal conference procedure is not completed within 30 days of notice of nonrenewal or if the insured is dissatisfied with the insurer's decision after the conference, the insured may appeal the decision to the insurance commissioner. MCL 500.2113(3); MSA 24.12113(3). 1981 AACS, R 500.1508(2), subds (c), (d).

Section 2113(4) requires that the insurance commissioner establish by rule a procedure for resolution of disputes between the insured and insurer under this section, which procedure shall be calculated to provide the resolution informally and as

rapidly as possible, while protecting both parties' interests. Pursuant to these dictates, the commissioner's rules provide that the appeal from the insurer's decision must be brought within 120 days of the decision. 1981 AACS, R 500.1510(2). The insured may be represented by another person through the appeal. 1981 AACS, R 500.1508(2)(e). The commissioner is then directed to review the appeal based on written materials or, if requested, based on a meeting with the parties. 1981 AACS, R 500.1510(3). Under the commissioner's procedures, the parties are given a chance to supply the agency with all relevant information. Provision is made for prompt resolutions by the commissioner. 1981 AACS, R 500.1511-500.1513. Included in the decision must be a notification that, if the insured disagrees with the decision, he can seek review by the commissioner as a contested matter under the Administrative Procedures Act, MCL 24.201 *et seq.,* 500.2113(5); MSA 3.560(101) *et seq.,* 24.12113(5).

The Administrative Procedures Act provides detailed procedures governing contested hearings. It specifies that notice as to the date, location, and nature of the hearing must be provided to the parties involved. It also provides for an evidentiary hearing, along with issuance of subpoenas at the request of the parties, the taking of depositions and discovery, cross-examination and the compilation of a record for purposes of appeal. MCL 24.271-24.276, 24.286; MSA 3.560(171)-3.560(176), 3.560(186). The decision of the commissioner is then required to be made in writing within a reasonable period. The decision must state the findings of fact and conclusions of law. If it is determined that the insured was not substantially at fault in an accident, the termination may be

deemed invalid and coverage reinstated either retroactively or from the date of the decision. The insurer may also be required to reimburse the insured for any excess premiums the insured has incurred as a result of the improper termination. 1981 AACS, R 500.1514. Thereafter, the insured may seek judicial review.

In performing the *Mathews* balancing test, we note first that an insured whose policy is terminated can still receive insurance at either a higher rate by the same insurer or from other insurers or through the insurance placement facility, which exists to provide insurance to anyone who cannot obtain insurance through private channels. The private interest involved, therefore, is uninterrupted insurance from the same insurer at the same premium rate. Certainly there is a risk of an erroneous deprivation of insurance before the insured can process his appeal. Such risks do not appear to be substantial, however, since the insured must be given notice of the insurer's decision to terminate coverage, an opportunity for an informal conference with the insurer, access to the information on which the insurer made its decision and an opportunity for a prompt review of the termination by the insurance commissioner. There do not appear to be any reasonable additional or substitute procedural safeguards, short of a judicial hearing, which would more adequately protect the insured against wrongful deprivation.

While a judicial determination as to whether the insured was substantially at fault in the accidents prior to the termination of coverage would reduce the risk of an erroneous deprivation, it would also seriously undercut the public interest involved, which is the administration of a low-cost, efficient automobile insurance system. To require a judicial

determination of fault prior to assessment of insurance eligibility points under the statute would not only substantially increase the cost of insurance protection and seriously undermine the efficiency of the insurance system but it would also, in our judgment, hopelessly overburden the limited resources of the state judicial system. Moreover, as a practical matter, given the already overloaded dockets in many of the courts of this state, it would often be impossible to conclude a full judicial evidentiary hearing on fault prior to the end of the three-year period during which the accident can be considered in determining insurance eligibility points. Judicial predetermination of fault would be clearly impractical and prohibitively expensive and is constitutionally unnecessary in light of the administrative procedures provided and the public and private interests involved.

We hold that the procedures provided in the EIA for administrative review of the insurer's decision to assess eligibility points and to terminate insurance coverage along with the post-termination remedies including an administrative evidentiary hearing and judicial review of the agency decision satisfy the requirements of due process of law.[1] The judgment of the circuit court is reversed. Our decision on this issue eliminates the necessity of disposing of the other issues raised by the parties.

---

[1] It should be noted that plaintiffs did not avail themselves of the procedures provided in the EIA for review of the insurer's decision to terminate coverage. However, the insurance commissioner's rules, 1981 AACS, R 500.1501 *et seq.,* setting forth the procedures for resolution of disputes between the insurer and the insured were not effective until October 30, 1981, more than four months after the plaintiffs' insurance was terminated. This fact does not affect our decision, however, because the availability of post-termination judicial review and relief, combined with the procedures in the EIA itself, satisfy due process. The administrative review procedures provided in the rules merely buttress this conclusion.

Reversed. Costs to appellants.

C. W. Simon, J., concurred.

T. M. Burns, P.J. *(dissenting)*. The majority stated that, "[t]he issue presented in this appeal is whether due process requires a judicial determination of fault *prior* to the assessment of insurance eligibility points for accidents in which the insured is found to be 'substantially at-fault' by the insurer". If that were the issue in this appeal, I would be inclined to agree with the majority. I believe the true issue in this appeal is whether the insured is entitled to notice and a fair determination of whether he is substantially at fault in an auto accident.

The majority finds that the procedures in the essential insurance act, MCL 500.2101 *et seq.;* MSA 24.12101 *et seq.,* satisfy the requirements of due process of law without considering the portion of the act that the trial court found unconstitutional. The majority begins its analysis of the act with the procedures that are employed after the insured is notified that his insurance will not be renewed. The trial court, however, found that the provision of the act regarding the insurer's determination of whether the insured is substantially at fault in an auto accident lacked sufficient safeguards to satisfy the requirements of due process of law.

In *Mathews v Eldridge,* 424 US 319, 348-349; 96 S Ct 893; 47 L Ed 2d 18 (1976), a case regarded as dispositive by the majority, the Supreme Court stated, "[t]he essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.' *Joint Anti-Fascist Comm v Mc-Grath,* 341 US 171-172 [71 S Ct 624; 95 L Ed 817

(1951)] (Frankfurther, J., concurring)". In *Mathews,* the Supreme Court found that due process did not require a full evidentiary hearing before social security disability benefits were terminated. The Supreme Court noted that the disability benefits recipient was notified of the procedures employed during the initial determination of whether the benefits should be terminated:

"The continuing-eligibility investigation is made by a state agency acting through a 'team' consisting of a physician and a nonmedical person trained in disability evaluation. The agency periodically communicates with the disabled worker, usually my mail—in which case he is sent a detailed questionnaire—or by telephone, and requests information concerning his present condition, including current medical restrictions and sources of treatment, and any additional information that he considers relevant to his continued entitlement to benefits. CM § 6705.1; Disability Insurance State Manual (DISM) § 353.3 (TL No. 137, March 5, 1975).

"Information regarding the recipient's current condition is also obtained from his sources of medical treatment. DISM § 353.4. If there is a conflict between the information provided by the beneficiary and that obtained from medical sources such as his physician, or between two sources of treatment, the agency may arrange for an examination by an independent consulting physician. *Ibid.* Whenever the agency's tentative assessment of the beneficiary's condition differs from his own assessment, the beneficiary is informed that benefits may be terminated, provided a summary of the evidence upon which the proposed determination to terminate is based, and afforded an opportunity to review the medical reports and other evidence in his case file. He also may respond in writing and submit additional evidence. *Id.,* § 353.6." 424 US 337-338. (Footnotes omitted.)

In the instant case, it is undisputed that plaintiffs received no notice from defendant that their

coverage was in jeopardy. They received no notice of defendant's *ex parte* determination of fault after each accident report. They received no notice that defendant was even engaging in such a determination. Plaintiffs were not given an opportunity to review the reports and other evidence used by defendant to reach its determination. "[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Westland Convalescent Center v Blue Cross & Blue Shield of Michigan,* 414 Mich 247, 261; 324 NW2d 851 (1982), quoting *Joint Anti-Fascist Refugee Committee v McGrath,* 341 US 123, 170; 71 S Ct 624; 95 L Ed 817 (1951) (Frankfurther, J., *concurring).*

Considering defendant's actions pursuant to the no-fault act, the trial court was entirely correct when it found " '[n]otice' as an element of due process, is completely absent in this case". This lack of notice greatly prejudices insureds. The insured may have to wait up to three years after an accident before the insurer sends notice that it was determined that he was at fault. Records pertaining to the accident may have been lost, witnesses may have disappeared or forgotten the events, and physical evidence may have been lost. By delaying notice to the insured, the insurer substantially hampers the insured's ability to challenge the initial determination in the post-termination proceedings on which the majority finds the act constitutional. Even if the insured has access to the evidence, his first confrontation with the trier of fact becomes an exercise in appellate advocacy, without the necessary prior "trial".

Considering how easy it would be to give the insured notice of the initial determination of fault and to allow the introduction of evidence at this stage, the insurer's actions pursuant to the no-

fault act appear very suspicious. There is simply
no good reason for denying the insured fair treat-
ment.

Not only is the insured kept ignorant of the
proceedings regarding the determination of fault,
the insurer, itself, makes the determination. "A
hearing before an unbiased and impartial decision-
maker is a basic requirement of due process."
*Crampton v Dep't of State,* 395 Mich 347, 351; 235
NW2d 352 (1975). In *Crampton,* the Michigan
Supreme Court reviewed several decisions by the
United States Supreme Court and found four situ-
ations in which the potential bias of a decision-
maker is so high as to be constitutionally imper-
missible; where the judge or decisionmaker:

"(1) has a pecuniary interest in the outcome;[9]

"(2) 'has been the target of personal abuse or criti-
cism from the party before him';[10]

"(3) is 'enmeshed in [other] matters involving peti-
tioner * * *';[11] or

"(4) might have prejudged the case because of prior
participation as an accuser, investigator, fact finder, or
initial decisionmaker.[12]

---

"[9] *Ward v Monroeville,* 409 US 57, 60; 93 S Ct 80; 34 L Ed 2d 267
(1972); *Tumey v Ohio, supra; Gibson v Berryhill, supra.*

"[10] *Withrow v Larkin, supra,* p 47, fn 15.

"[11] *Johnson v Mississippi,* 403 US 212, 215; 91 S Ct 1778; 29 L Ed 2d
423, 427 (1971).

"[12] *In re Murchison, supra; Goldberg v Kelly,* 397 US 254, 271; 90 S
Ct 1011; 25 L Ed 2d 287 (1970); *Morrissey v Brewer,* 408 US 471, 485-
486; 92 S Ct 2593; 33 L Ed 2d 484, 497 (1972)." 395 Mich 351.

---

Only situation 2 is inapplicable to the present
case. There can be no serious question that an
insurer has a pecuniary interest in the outcome of
its determination of fault in an accident involving
one of its insureds. The insurer, a profit-making
entity, is legitimately concerned with increasing

the amount of premiums it receives. The fact that
the insured may be required to procure insurance
from another insurer does not change this result.
*Gibson v Berryhill,* 411 US 564; 93 S Ct 1689; 36 L
Ed 2d 488 (1973).

The defendant should also be disqualified from
deciding the causation of accidents involving its
insured because of its prior involvement with the
insured. While the combination of its investigative
and adjudicative functions alone does not consti-
tute a due process violation, *Withrow v Larkin,*
421 US 35, 58; 95 S Ct 1456; 43 L Ed 2d 712 (1975),
due process is denied if the initial determination
forecloses fair and effective consideration at a
subsequent hearing. The defendant is so enmeshed
in matters involving plaintiff that it should not be
constitutionally permitted to decide the causation
of accidents involving plaintiff.

Another factor which displays the unconstitu-
tionality of the insurer's proceedings to determine
whether the insured was substantially at fault in
an auto accident is the total lack of standards
employed by the insurer. Considering the fact that
a full trial is deemed unnecessary, specific stan-
dards should be set forth to prevent arbitrary and
unjust determinations.

During discovery for the present case, plaintiffs
asked defendant:

"Is there written policy as to the criteria involved in
determining substantial fault in automobile accidents?
If so, please attach copies thereof to the answers to
these interrogatories. If there is no written policy con-
cerning the determination of fault in automobile acci-
dents, please describe briefly said criteria."

Defendant failed to provide any documentation

establishing a standard for determining fault but replied as follows:

"Written underwriting rule provides that a substantially at-fault accident is one where the person's action or inaction was more than 50% of the cause of the accident. In addition, our claim representatives know that fault means a lack of reasonable care under the accident circumstances."

I consider the standard employed by the defendant totally unacceptable. The majority finds *Mathews, supra,* dispositive of this case. *Mathews* involved the cessation of social security disability benefits. The determination as to whether these benefits should continue is governed by extensive, well-documented federal regulations. The determination is also based upon independent medical reports which are supported by "medically acceptable clinical and laboratory diagnostic techniques". 42 USC 423(d)(3). Defendant, however, makes its determination without the benefit of any independent advice and is free to determine the standard implied by "reasonable care under the accident circumstances". In fact, the use of this "reasonable care" standard could theoretically result in a determination that both drivers involved in the accident were over 50% at fault since both drivers may be determined to have lacked "reasonable care under the accident circumstances". There is no provision in the act or regulation to prevent this possibility. Also, if a driver changes insurance companies, the new insurer may determine that the driver was at fault in an accident in which the former insurer found the driver was not at fault.

The trial court considered all these factors and concluded that the provisions of the no-fault act which allowed the insurer to determine who is at

fault in an accident are unconstitutional. The majority failed to review any of these factors and finds these provisions of the act constitutional. Considering that the insurer is allowed to arbitrarily determine fault in an accident without specific guidelines for making the determination and without giving any notice or opportunity to present evidence to the insured involved in the accident, I would find that the procedures employed by the insurer under the no-fault act denied the insured due process of law. Since I believe the act is clearly unconstitutional, I would affirm the judgment of the trial court.