# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL E. MCCARTHA,

　　　　　Plaintiff-Appellant,

v

STATE FARM FIRE & CASUALTY
COMPANY,

　　　　　Defendant-Appellee.

UNPUBLISHED
August 16, 2016

No. 326689
Wayne Circuit Court
LC No. 14-006477-CZ

Before: BECKERING, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting defendant's motion for summary disposition because no genuine issue of fact existed that exclusionary provisions in plaintiff's homeowner's insurance policy precluded coverage for roof and interior water damage to his home. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On October 2, 2010, during a rainstorm, plaintiff's daughter was alone sleeping inside plaintiff's home when she heard a "loud crash" on the roof. She went outside and observed a large tree limb lying on the roof. It looked like the tree in plaintiff's backyard had split and fell toward the right side of the house. Photographs submitted by plaintiff show a large tree limb resting on the corner of the edge, along the side of the house near or on the gutter. Plaintiff's daughter observed damage to the fence and gutter, but she did not notice any damage "from the roof inward."

After the tree limb fell, plaintiff made an insurance claim with State Farm, his homeowner's insurer, for damage to his roof. A claims representative inspected the exterior of the property and observed the condition of the roof to be "very bad," "severely deteriorated," with signs of wear, tear, deterioration, and prior damage. There was a large hole in the middle of the roof, worn shingles, areas missing shingles, and the remains of a blue tarp that appeared to have been exposed to the weather for a significant time. Photographs of the roof taken at the time of the loss also show an area of damage and deterioration on the back slope of the roof toward the middle of the roof. State Farm paid plaintiff's claim for the removal of tree debris and for repairs to the visible damage to his gutter and fencing. But State Farm denied coverage for the damage to the roof, determining that the damage was the result of wear, tear, deterioration or neglect; policy exclusions precluded coverage for such losses.

-1-

Several months after State Farm denied his claim for loss to his roof, plaintiff made an additional claim under his homeowner's policy for interior water damage which he said occurred after the tree limb fell on his house in October 2010, and resulted from that incident. After re-inspecting the property in September 2011, State Farm denied plaintiff's claim for interior water damage, citing his failure to immediately notify State Farm of the damage; his failure to protect the property at or after the time of the loss; the lack of policy coverage due to mold, rot, and neglect; and his willful failure to cooperate in State Farm's investigation of the loss.

Thereafter, plaintiff filed this lawsuit, alleging that State Farm breached its insurance contract in failing to pay his claims. State Farm moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that no genuine issue of material fact existed that the roof and interior water damage was not accidental but was the result of wear and tear, deterioration, or neglect—losses that were expressly excluded from coverage under the terms of the policy. State Farm further argued that coverage for the claimed losses was precluded by the anti-concurrent causation clause in the policy exclusions. State Farm supported its motion with deposition testimony, affidavits, photographs, and other documentary evidence indicating that the visible damage to the roof was not caused by the fallen tree limb; rather, plaintiff's roof was already in a poor and deteriorated condition, and had not been properly maintained at least several months before the tree limb fell. The trial court granted State Farm's motion for summary disposition, concluding that the policy exclusion for wear, tear or deterioration, along with the anti-concurrent causation exclusion, applied to preclude coverage for plaintiff's claimed losses. This appeal followed.

## II. SUMMARY DISPOSITION MOTION

Plaintiff argues that the trial court erred in granting State Farm's motion for summary disposition under MCR 2.116(C)(10). We disagree.

We review de novo a trial court's decision on a motion for summary disposition. *Hayley v Allstate Ins Co*, 262 Mich App 571, 573; 686 NW2d 273 (2004). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Id*. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. "'When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial.'" *Id.*, quoting MCR 2.116(G)(4).

We also review de novo the construction of an insurance contract. *Sunshine Motors, Inc v New Hampshire Ins Co*, 209 Mich App 58, 59; 530 NW2d 120 (1995). "An insurance policy is a contract that should be read as a whole to determine what the parties intended to agree on." *McKusick v Travelers Indemnity Co*, 246 Mich App 329, 332; 632 NW2d 525 (2001). "In interpreting insurance policies, we are guided by well-established principles of construction." *Id.*

"The policy must be enforced in accordance with its terms; therefore, if the terms of the contract are clear, we cannot read ambiguities into the policy." *Id.*

> Exclusionary clauses in insurance policies are strictly construed in favor of the insured. However, coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume." [*Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992) (citations omitted).]

We agree that the policy exclusions apply to preclude coverage for the roof and interior water damage in this case. The first exclusion at issue clearly and unambiguously excludes coverage for any loss consisting of, or directly and immediately caused by, wear, tear, or deterioration, and provides:

> 1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

> * * *

> g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown[.]

On the evidence presented, there is no genuine issue of material fact that the damage to the roof consisted of wear, tear, or deterioration. There is no dispute that, in March 2010, before the tree limb fell in October 2010, plaintiff received several quotes to replace the roof and that, even before March 2010, plaintiff attempted to perform repairs to the roof himself in an area where the shingles were "stripped away" or "just about gone." Testimony by Jack McCauley, plaintiff's own expert who observed plaintiff's property in March 2010 for the purpose of providing quotes to replace the roof and to do some interior work, testified that the roof was in "[v]ery poor condition," shingles were deteriorated, falling off, and missing, and roof boards were showing where shingles were completely off. McCauley believed there was a hole in the roof and that the roof, which appeared to be twenty years old, had not been maintained in any way.

McCauley also observed water damage in the bathroom, a back bedroom, and kitchen, which was caused by water leaking from the roof. The damage included deteriorated wet plaster, peeling paint and plaster, and holes in the ceilings. McCauley testified that the roof needed to be replaced "right away" in March 2010, and if it was not repaired, water would continue to enter the house and cause interior damage. Plaintiff's daughter also testified that, before the tree limb fell in October 2010, the roof was "already bad." Water was entering plaintiff's bedroom, by the side door, and next to the kitchen, and there was a hole in the ceiling over plaintiff's bedroom.

McCauley further testified that the poor, deteriorated condition of the roof shown in the photographs taken at the time of the loss in October 2010 was consistent with the damage he

observed in March 2010, before the tree limb fell, and that the tree limb did not cause the deterioration damage to the roof. McCauley believed that the interior water damage depicted in the 2011 photographs was also generally consistent with the damage he observed in March 2010, before the tree limb fell. From this testimony, it can be reasonably inferred that the claimed damage to the roof did not result from the fallen tree limb but consisted of prior damage attributable to wear, tear, or deterioration.

Plaintiff asserted that State Farm failed to prove that the roof damage was the result of deterioration and denied that he had experienced any water leaks, damage, or problems with the roof before the tree limb fell. However, plaintiff failed to advance any evidence to dispute the testimony of McCauley, as well as his daughter, regarding the poor and deteriorated condition of the roof existing before the tree limb fell. Photographs showed the deteriorated condition of the roof in that shingles were missing, falling off, and curling, and there appeared to be a hole in the roof.[1] The photographs submitted by plaintiff to support his claim of loss show the tree limb resting on the corner of the edge along the side of the house, away from this damaged area. Plaintiff claimed that the tree limb hit the roof, bounced, and then rolled off the side, causing the damage. Plaintiff was not at home when the tree fell, and thus, he did not witness the incident. Plaintiff's speculation does not rise to the level of a genuine issue of material fact for trial. See *Maiden*, 461 Mich at 120 (a party opposing the motion may not rest on mere allegations or denials, but must set forth specific facts showing a genuine issue for trial).

And although McCauley opined that the falling tree limb could cause a hole in the roof, he viewed the photographs and did not see how it could have struck the roof and then rolled off to the side of the house. The photographs do not reveal damage in the specific spot where plaintiff claimed the tree limb struck over his daughter's bedroom. Viewing the photographs, McCauley testified, it did not even look like the tree landed on the roof, but "kind of went down the side of the house," damaging the gutters. He also testified that there was "no way" other tree branches shown in another photograph submitted by plaintiff caused the hole in the roof. Plaintiff's daughter also testified that her recollection of the damage she observed after the tree limb fell was to the gutter and fence on the side of the house.

We recognize that McCauley noted on his quote to replace the roof several months after the incident that "there is strong evidence that holes in the roof were caused by falling branches from tree in backyard." However, McCauley testified during his deposition that he said that only because plaintiff asked him to, so that insurance would pay for the roof repairs. McCauley confirmed his opinions that: (1) the roof was deteriorated, in poor condition, and leaking before

---

[1] We disagree with plaintiff's argument that State Farm was required to substantiate the deterioration with scientific and/or engineering evidence to satisfy the exclusion. The terms "deterioration" and "wear and tear" are not defined by the policy so they are accorded their plain meaning. See *Royce v Citizens Ins Co*, 219 Mich App 537, 542; 557 NW2d 144 (1996). The ordinary and plain meaning of "deteriorate," as defined by Webster's New World Dictionary, Second College Edition (1984), is simply "worse, inferior," and "wear and tear" is defined as "loss and damage resulting from use."

the tree limb fell; (2) the branches on the roof would not have caused the deterioration of the roof or the slippage of the shingles; and (3) the photographs of the roof taken at the time of loss in October 2010 showed the same poor condition that existed when he observed the property in March 2010.[2]

On the evidence presented, it is undisputed that the poor and deteriorated condition of plaintiff's roof was evident months before the tree limb fell and there is no evidence, only mere speculation, that the claimed damage to the roof was caused by the fallen tree limb. Accordingly, there is no genuine issue of material fact that the claimed damage falls squarely within the policy exclusion expressly excluding coverage for loss consisting of wear, tear, or deterioration. "Coverage under a policy is lost if any exclusion within the policy applies to a particular claim." *Allstate Ins Co v Keillor (After Remand)*, 450 Mich 412, 420; 537 NW2d 589 (1995). The exclusion also precluded coverage for the interior water damage as a direct and immediate result of the deterioration of the roof, regardless of whether the loss occurred suddenly or gradually.

Even assuming that the fallen tree limb aggravated the water damage to the interior of the home, coverage for the damage would be precluded under the policy's exclusion for neglect of the insured. That exclusion expressly excludes coverage for any loss that would not have occurred in the absence of neglect:

> 2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> \* \* \*
>
> d. Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when the property is endangered.

Under this provision, known as an anti-concurrent causation clause, a loss is plainly excluded from coverage if it would not have occurred in the absence of the insured's neglect in failing to use all reasonable means to save and preserve the property at and after the time of a loss or when the property is endangered, regardless if there is a contributing cause acting concurrently or in

---

[2] Plaintiff also submitted a quote from a construction company which evaluated the roof for storm damage almost a year after the tree limb fell, claiming it was evidence that the roof was not deteriorated. But the quote stated that it was impossible to determine the extent of storm damage caused by a tree "[d]ue to the poor condition of the roof," which supports the testimony regarding the roof's condition.

any sequence with the neglect to produce the loss. See *Sunshine Motors, Inc*, 209 Mich App at 59-60.

Given the poor and deteriorated condition of the roof that McCauley opined would cause water to continue to enter the house if not repaired several months *before* the claimed loss, there is no dispute that the house was clearly "endangered" from leaking water even months before the tree limb fell. Plaintiff also admittedly did not take any action to repair or protect the roof after the tree limb fell, but before he started experiencing water leaking through the ceiling, even though the insurance contract obligated him to protect the property from further damage or loss at or after the claimed loss occurred and make reasonable and necessary temporary repairs. Plaintiff's failure to act under these circumstances clearly constituted neglect within the meaning of the policy. And under the anti-concurrent coverage clause, coverage for the water damage caused by plaintiff's neglect was excluded regardless of any other cause that may have acted to produce the loss.

In summary, plaintiff failed to set forth evidence to refute State Farm's clear evidence that the damage to the roof was the result of wear, tear, or deterioration which existed months before the tree limb fell. Further, the neglect exclusion also precluded coverage for the water damage. Accordingly, plaintiff cannot recover under the policy and summary disposition of his breach of contract claim against State Farm was proper.

## III. MOTION TO AMEND

Plaintiff also argues that the trial court abused its discretion in denying his motion to amend his complaint. Because plaintiff's proposed claims are not actionable, we disagree.

We review a trial court's decision regarding leave to amend a complaint for an abuse of discretion. *PT Today, Inc v Comm'r of the Office of Fin & Ins Servs*, 270 Mich App 110, 142; 715 NW2d 398 (2006). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *In re Kostin Estate*, 278 Mich App 47, 51; 748 NW2d 583 (2008). "This Court will not reverse a trial court's decision regarding leave to amend unless it constituted an abuse of discretion that resulted in injustice." *PT Today, Inc*, 270 Mich App at 142.

A court should freely grant leave to amend a complaint "when justice so requires." MCR 2.118(A)(2). "Thus, a motion to amend should ordinarily be denied only for particularized reasons, including . . . futility." *PT Today, Inc*, 270 Mich App at 143. "There is no injustice if the proceedings would have reached the same result if the trial court had not denied a party leave to amend its pleadings." *Id.* at 142. "An amendment would be futile if (1) ignoring the substantive merits of the claim, it is legally insufficient on its face; (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction." *Id.* at 143 (internal citations omitted).

Here, over two years after filing his initial complaint alleging breach of contract, plaintiff sought to amend his complaint to add additional factual allegations regarding State Farm's allegedly negligent and fraudulent conduct in: inspecting the property damage and handling his claim; reporting to the underwriters; and canceling his policy. Plaintiff added claims seeking

-6-

damages for "bad faith in insurance" and violations of the Michigan's Insurance Code. Plaintiff also sought additional compensatory damages, as well as statutory and punitive damages. State Farm opposed the amendment on the basis that allowing amendment over two years into the litigation would cause undue delay and, moreover, the amendments would be futile because the additional claims alleged were not actionable in Michigan. The trial court agreed and denied plaintiff's motion to amend on both bases. We agree that plaintiff's proposed claims are not actionable, making amendment futile. See *PT Today, Inc*, 270 Mich App at 143.

## A. BAD FAITH IN INSURANCE

First, plaintiff moved to amend his complaint to add a tort claim for "bad faith in insurance," essentially alleging that State Farm failed to fully perform in good faith the duties owed under the insurance contract in investigating and handling his insurance claim. But Michigan has declined to recognize an independent tort cause of action for an insurer's bad faith handling of an insured's claim or denial of benefits arising from an insurer's breach of an insurance contract.[3]

Further, to the extent that the allegations contained in plaintiff's proposed amended complaint may be read to allege that State Farm negligently performed its obligations under the contract by failing to act reasonably in handling plaintiff's claim, such claims arose from the insurance contract and, thus, do not support an independent tort claim. The duty to use ordinary care in performance of the contract arises out of the contract and is not independent of the contract. *Burnside v State Farm Fire & Cas Co*, 208 Mich App 422, 432-433; 528 NW2d 749 (1995) (TALBOT, J., concurring). Thus, "when there is a mere breach of contract, whether in good faith or not, there is no independent tortious action . . . ." *Id.* at 432. Accordingly, plaintiff's claim for "bad faith in insurance" is not actionable and, thus, the proposed amendment adding this claim to his complaint would be futile. See *PT Today, Inc*, 270 Mich App at 143.

## B. VIOLATIONS OF MICHIGAN'S INSURANCE CODE

Plaintiff also sought to add claims seeking statutory damages for alleged violations of Michigan's Insurance Code, MCL 500.100 *et seq*. First, plaintiff sought to amend his complaint to add a claim for violation of MCL 500.2005/MCL 500.2005a of the Uniform Trade Practices Act (UTPA), alleging that State Farm committed unfair and deceptive acts by making misrepresentations of material facts to its underwriters that induced the underwriters to terminate his policy. However, no private cause of action may be brought under the UTPA; rather, plaintiffs who believe the UTPA has been violated may complain to the Insurance

---

[3] See, e.g., *Hearn v Rickenbacker*, 428 Mich 32, 37; 400 NW2d 90 (1987) (breach of an insurer's duty to act in good faith in the handling and payment of claims is not a tort recognized in Michigan); *Casey v Auto Owners Ins Co*, 273 Mich App 388, 401-402; 729 NW2d 277 (2006) ("An alleged bad-faith breach of an insurance contract does not state an independent tort claim."); *Runions v Auto-Owners Ins Co*, 197 Mich App 105, 109-110; 495 NW2d 166 (1992) (the "tort of bad-faith handling of an insurance claim" is "nonexistent" and there is no cause of action in tort where the only tortious conduct alleged is the insurer's failure to pay the claim).

Commissioner. *Crossley v Allstate Ins Co*, 155 Mich App 694, 697; 400 NW2d 625 (1986); *Safie Enterprises, Inc v Nationwide Mut Fire Ins Co*, 146 Mich App 483, 494; 381 NW2d 747 (1985). Thus, such amendment would have been futile. See *PT Today, Inc*, 270 Mich App at 143.

Second, plaintiff sought to amend his complaint to add a claim for violation of MCL 500.2124, a provision contained within the Essential Insurance Act, MCL 500.2101 *et seq.*, which concerns home and automobile insurance. *Flumignan v Detroit Auto Inter-Ins Exch*, 131 Mich App 121, 123; 345 NW2d 910 (1983). Plaintiff alleged that State Farm committed "gross negligence" and "bad faith with malice" when it knowingly and fraudulently communicated false and unsubstantiated information to its underwriters regarding the reasons for cancellation of his policy.

Whether a private cause of action for damages exists for the violation of a statute depends on the Legislature's intent to create a right of action for the statutory violation. *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 534-535; 872 NW2d 412 (2015); *Lash v Traverse City*, 479 Mich 180, 192-193; 735 NW2d 628 (2007). MCL 500.2124 does not expressly create a private right of action. Instead, its language evidences a legislative intent to limit exposure to civil liability against the commissioner or its employees, an insurer or its employees or its authorized representatives, or a licensed insurance agent for certain statements made concerning an insured, unless the statement was made with gross negligence or in bad faith with malice in fact. MCL 500.2124(1), (2). The Michigan Insurance Code, of which MCL 500.2124 is a part, also does not expressly provide a private cause of action for enforcement of its provisions. "Nevertheless, it is sometimes possible that a court can infer a private cause of action from a statute when necessary to remediate its breach." *Epps*, 498 Mich at 534. An inference is appropriate when there is no express remedy for its violation, but it is deemed, exclusively or in part,

> (a) to protect a class of persons which includes the one whose interest is invaded; (b) to protect the particular interest which is invaded; (c) to protect that interest against the kind of harm which has resulted; and (d) to protect that interest against the particular hazard from which the harm results. [*Id.* (citations and quotations omitted.)]

In this case, there is no basis to infer a private cause of action for damages to enforce MCL 500.2124. Chapter 21 of the Insurance Code expressly provides a mechanism for enforcement of its provisions. *Epps*, 498 Mich at 534. Under MCL 500.2113(1), if a person has reason to believe that an insurer, as alleged in this case, has improperly denied him insurance, he is entitled "to a private informal managerial-level conference with the insurer and to a review before the commissioner, if the conference fails to resolve the dispute." If either party disagrees with a determination of the commissioner, the commissioner, upon request, is required to hear the matter as a contested case under the Administrative Procedures Act, MCL 24.201 *et seq.* MCL 500.2113(5); *Flumignan*, 131 Mich App at 128-129, citing 1981 AACS R 500.1508-1513. Under the administrative regulations, if the commissioner finds an improper termination, coverage may be reinstated. Rule 500.1514. Because Chapter 21 has its own legislatively created remedial scheme for the insured to redress an improper termination of insurance, it

should not be interpreted to allow an insured a private cause of action for damages for violations of its provisions. *Epps*, 498 Mich at 534-535.

The crux of plaintiff's allegation is that his insurance was terminated because of the false and unsubstantiated statements State Farm's claims representative knowingly made, in bad faith, to its underwriters regarding the condition of his property. Plaintiff could have contested the allegedly improper termination by pursuing the matter through the remedial scheme specifically provided for in Chapter 21 of the Insurance Code, MCL 500.2113, and thus, was not without a remedy under the Code. See *Epps*, 498 Mich at 534-535; *Fisher v WA Foote Mem Hosp*, 261 Mich App 727, 730-731; 683 NW2d 248 (2004).[4] Because plaintiff had no private cause of action for the alleged violation of MCL 500.2124, such amendment would have been futile. See *PT Today, Inc*, 270 Mich App at 143.

Third, plaintiff sought to amend his complaint to add a claim for violation of MCL 500.4503, which governs insurance fraud and is included in Chapter 45 of the Insurance Code, MCL 500.4501 *et seq*. Plaintiff sought statutory penalties, under MCL 500.4511, for State Farm's fraudulent insurance acts specified in MCL 500.4503. The insurance fraud provisions under Chapter 45 do not expressly create a private cause of action. Thus, plaintiff's claim under MCL 500.4503 is precluded if the code provides an adequate means of enforcing its provisions. See *Epps*, 498 Mich at 534-535; *Fisher*, 261 Mich App at 730-731. MCL 500.4503 defines fraudulent insurance acts for the purpose of criminal liability under MCL 500.4511(1). MCL 500.4511(1) provides that a person who commits a fraudulent insurance act is guilty of a felony and sets forth the punishment for violations of MCL 500.4503. Chapter 45 of the Insurance Code, thus, adequately provides its own remedial scheme to redress the alleged violations through the imposition of criminal liability for fraudulent acts. *Epps*, 498 Mich at 534-535; *Fisher*, 261 Mich App at 730-731. Therefore, we conclude that plaintiff also does not have a private cause of action to redress the alleged fraudulent acts under MCL 500.4503, making futile an amendment to his complaint to add the claim. See *PT Today, Inc*, 270 Mich App at 143.

Finally, although plaintiff did not include a proposed claim of common-law fraud in his motion to amend, he argues on appeal that such amendment is warranted. We generally do not consider an issue on appeal that was not properly raised and decided by the trial court. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (citation omitted). Nevertheless, this issue is without merit.

"[T]o constitute actionable fraud plaintiffs must establish that (1) defendant made a material representation; (2) it was false; (3) when it was made defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) defendant

---

[4] Further, the general provisions of Michigan's Insurance Code, of which Chapter 21 is a part, also provide a remedial scheme for the commissioner to enforce violations of the Code. See MCL 500.150(1)(a), (b). And MCL 500.230 states that, unless otherwise provided, every penalty under the Code shall be sued for and recovered in the name of the prosecuting attorney, which "precludes a private party from recovering penalties specified in the code unless otherwise provided." *Young v Mich Mut Ins Co*, 139 Mich App 600, 604-605; 362 NW2d 844 (1984).

made it with the intent that it should be acted upon by plaintiff; (5) plaintiff did act in reliance upon it; and (6) plaintiff thereby suffered injury." *Webb v First of Mich Corp*, 195 Mich App 470, 473; 491 NW2d 851 (1992). Here, plaintiff alleged that State Farm's claims representative knowingly or recklessly made material misrepresentations regarding the deteriorated condition of plaintiff's roof with the intent that plaintiff would act on them, i.e., inducing him to pay for the repairs to his roof by threatening to cancel plaintiff's homeowner's policy if he did not replace his own roof. However, plaintiff did not allege that he acted in reliance on the alleged misrepresentations concerning the condition of his roof. In fact, plaintiff admits that he did not repair the roof. Thus, plaintiff failed to state a claim of actionable fraud, making futile an amendment to add such a claim. See *PT Today, Inc*, 270 Mich App at 143.

## C. PUNITIVE DAMAGES

Finally, plaintiff moved to amend his complaint to add a claim for punitive damages. "Punitive damages, which are designed to punish a party for misconduct, are generally not recoverable in Michigan." *Casey v Auto Owners Ins Co*, 273 Mich App 388, 400; 729 NW2d 277 (2006). "The exception is if [such damages] are expressly authorized by statute." *Id.* Plaintiff did not cite any statute that would grant him punitive damages. Instead, he generally alleged a right to punitive damages "resulting from the oppressive conduct undertaken by Defendant State Farm for willfully and maliciously, in conscious disregard of the rights and interests of Plaintiff, along with and for Defendants negligence and contempt directed towards the injuring of Plaintiff; sum to be fixed at trial." This allegation is not sufficient to support a claim for punitive damages. Accordingly, amendment of plaintiff's complaint to add his claim for punitive damages would be futile. See *PT Today, Inc*, 270 Mich App at 143.

Because the trial court properly denied plaintiff's motion to amend his complaint on the basis of the futility of his proposed claims, we do not address whether the motion to amend, filed over two years after the initial complaint, was unduly delayed.

## IV. MOTION TO COMPEL DISCOVERY

Plaintiff also argues that the trial court abused its discretion in denying in part his motion to compel discovery. We disagree.

This Court reviews for an abuse of discretion a trial court's decision on a motion to compel discovery. *Cabrera v Ekema*, 265 Mich App 402, 406; 695 NW2d 78 (2005). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *In re Kostin Estate*, 278 Mich App at 51.

"It is well settled that Michigan follows an open, broad discovery policy that permits liberal discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending case." *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998). "[T]he purpose of discovery is to simplify and clarify issues. Thus, the rules should be construed in an effort to facilitate trial preparation and to further the ends of justice." *Id.* (citation omitted). However, a trial court should also protect the interests of the party opposing discovery so as not to subject that party to excessive, abusive, or irrelevant discovery requests." *Cabrera*, 265 Mich App at 407.

Plaintiff argues that State Farm's internal procedures and guidelines for investigating claims would lead to discovery of material that could potentially provide a "basis to a windfall of dishonest acts committed by" the claims representative and for further unlawful acts prohibited by statute. Likewise, regarding the underwriting report sought, plaintiff argues that it would "bring forth" his complaint of insurance fraud and reveal that the claims representative's reports regarding the condition of plaintiff's property were false and misleading.

However, the only claim at issue in this case is State Farm's alleged breach of contract in denying coverage for plaintiff's claimed loss. Although the good faith of the parties is relevant to a breach of contract claim, *Isagholian v Transamerica Ins Corp*, 208 Mich App 9, 12; 527 NW2d 13 (1994), State Farm would not be subject to any legal duty arising from its internal guidelines and procedures. Rather, the insurance contract governs State Farm's duties and obligations. And the underwriting reports concern the cancellation of plaintiff's insurance policy, which occurred after plaintiff made his claim for loss and is not at issue in this case involving State Farm's alleged breach of contract in failing to pay plaintiff's claim for losses under the policy. Accordingly, the materials sought by plaintiff are not relevant or "reasonably calculated to lead to the discovery of admissible evidence" in this breach of contract action. See MCR 2.302(B)(1).

Furthermore, the trial court reviewed the underwriting materials *in camera* to see if there was anything that State Farm did not produce that should have been produced. Plaintiff was also provided with the entire claim file, as redacted for privileged information, including the activity log notes of the claims representative, which noted what the claims representative reported to the underwriters about the condition of the roof. On this record, we find no abuse of discretion in denying the motion to compel discovery. See MCR 2.302(B)(1); *Cabrera*, 265 Mich App at 406.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

-11-