CABRERA v EKEMA

Docket No. 250854, Submitted December 7, 2004, at Grand Rapids.
Decided March 10, 2005, at 9:00 a.m.

Mayra Cabrera and Norma Portillo brought an action in the Kalama-
zoo Circuit Court against Linda Ekema and Blanche Taylor, doing
business as Five Star Cleaning, to recover back pay for cleaning
work the plaintiffs performed as employees of the defendants. The
plaintiffs' complaint alleged violations of the Fair Labor Standards
Act (FLSA), 29 USC 201 *et seq.*; violations of the Employee Right to
Know Act, MCL 423.501 *et seq.*; breach of contract; unjust enrich-
ment; and conversion. Ekema served interrogatories and requests
for documents on the plaintiffs, seeking discovery of their social
security numbers and immigration documents. The plaintiffs as-
serted that the information requested was irrelevant and was
sought for the improper purpose of intimidating them. The court, J.
Richardson Johnson, J., granted in part Ekema's subsequent mo-
tion to compel discovery, requiring the plaintiffs to disclose their
social security numbers, but limiting the defendants' use of the
social security numbers to matters in the case before the court and
inquiries to the Social Security Administration to determine the
amount credited to the plaintiff's social security accounts as a result
of work performed for the defendants. The court denied the plain-
tiffs' motion for reconsideration. The plaintiffs appealed by leave
granted.

The Court of Appeals *held*:

The production of the plaintiffs' social security numbers is
irrelevant to determining the defendants' liability for unpaid
wages. Pursuant to the requirements of federal law, an employer is
required to report wages to the appropriate federal agencies,
including the Social Security Administration. Thus, Ekema al-
ready knows the information sought through discovery and the
discovery order is irrelevant to the purpose for which it was
ordered. Federal law further prohibits the knowing employment of
unauthorized aliens and establishes verification and recordkeep-
ing procedures, 8 USC 1324a. Consistent with federal case law,
immigration status is not relevant in an action under the FLSA by
an employee seeking wages for work already performed, and the

trial court abused its discretion by compelling production of the plaintiffs' social security numbers. Moreover, the discovery was sought for the improper purpose of intimidating the plaintiffs to withdraw their lawsuit and forgo their rights to recover unpaid wages for work already performed.

Reversed.

PRETRIAL PROCEDURE — DISCOVERY — FAIR LABOR STANDARDS ACT — SOCIAL SECURITY NUMBERS — IMMIGRATION STATUS.

Discovery of a plaintiff's social security number or immigration status is irrelevant in an action under the Fair Labor Standards Act, 29 USC 201 *et seq.*, for work the plaintiff already performed.

*Michigan Migrant Legal Assistance Project, Inc.* (by *Mariza Gamez-Garcia*), for Mayra Cabrera and Norma Portillo.

*Ed Annen, Jr.*, for Linda Ekema.

Before: HOEKSTRA, P.J., and GRIFFIN and BORRELLO, JJ.

GRIFFIN, J. Plaintiffs Mayra Cabrera and Norma Portillo appeal by leave granted a discovery order that compels plaintiffs to provide their social security numbers to counsel for defendant Linda Ekema "for the limited purpose of determining the amount of funds that have been credited to the Plaintiffs' social security numbers as a result of work the Plaintiffs performed specifically for the Defendants, and not for other employers." We reverse and hold that the trial court abused its discretion in compelling production of plaintiffs' social security numbers because (1) the information sought was not relevant and (2) discovery was for the improper purpose of intimidating plaintiffs from exercising their rights. MCR 2.302(C).

I

Defendant-appellee Linda Ekema and defendant Blanche Taylor own Five Star Cleaning. In February

2001, plaintiffs orally agreed to perform maintenance services for defendants for $8 an hour. In mid-April 2001, Ekema laid plaintiffs off for several days so that she could resolve problems she was having with other employees. On April 19, 2001, Ekema informed plaintiffs that they could return to work, but that they would now be paid for each apartment cleaned. Plaintiffs allege that defendants failed to pay them for work performed between March 9 and April 26, 2001. Cabrera claims that she is owed $960 in wages earned for this period; Portillo claims she is owed $2,094. In May 2001, Ekema sent Cabrera a check for $244.53 and Portillo a check for $421.81, writing "final paycheck paid in full" on the face of each check. Plaintiffs did not cash these checks.

On January 30, 2002, plaintiffs brought suit against Ekema and Taylor to recover back pay for wages actually earned. Plaintiffs' complaint alleges: (1) violations of the Fair Labor Standards Act (FLSA), 29 USC 201 et seq., (2) violations of the Employee Right to Know Act, MCL 423.501 et seq., (3) breach of contract, (4) unjust enrichment, and (5) conversion. On April 30, 2003, Ekema served on plaintiffs interrogatories and requests for documents seeking discovery of plaintiffs' social security numbers and immigration documents, including the date on which they were obtained. Plaintiffs' answers asserted that the information requested was not discoverable because it was irrelevant to the subject matter and to Ekema's defenses. On May 20, 2003, Ekema filed a motion to compel interrogatory answers, arguing that the requested information was either relevant or might lead to relevant information. Plaintiffs filed their response on May 30, 2003, arguing that (1) their immigration status is irrelevant to any material aspect of the case, (2) they are entitled to the wages, regardless of immigration status, and (3) discov-

ery of the requested information was sought for the improper purpose of intimidating plaintiffs to withdraw the lawsuit.

The trial court heard Ekema's motion June 2, 2003. At the hearing, Ekema's defense counsel represented that his client asked for and received social security numbers from plaintiffs when they were hired, but that his client had since become concerned about plaintiffs' immigration status. Defense counsel also asserted that there was a factual dispute between the parties regarding whether plaintiffs stopped working for defendants on either April 3 or April 26, 2002. Defense counsel emphasized that plaintiffs needed to have "clean hands" to succeed on either their unjust enrichment or conversion claims. Concerning the breach of contract count, defense counsel argued that there were potential questions regarding whether an illegal alien could contract for employment or allege a breach of an employment contract. Regarding the FLSA count, defense counsel queried whether illegal aliens were entitled to liquidated damages. Finally, in the words of counsel for Ekema, if plaintiffs could not produce legitimate social security numbers or immigration documents, "we have a much more complicated lawsuit than . . . plaintiff[s] would like you to believe."

Plaintiffs' counsel responded that the issue underlying all counts of the complaint was "the fact that the plaintiffs worked and they did not receive wages for work that has already been performed."

From the bench, the trial court granted Ekema's motion in part. The trial court ordered plaintiffs to disclose their social security numbers, but ordered that defendants could use them only in a limited manner. Plaintiffs were not compelled to provide defendants with copies of their green cards or alien work permits.

The trial court's June 2, 2003, bench ruling was effectuated by an order entered August 20, 2003. In its partial protective order, the trial court ordered the following with regard to plaintiffs' social security numbers:

> i. Said social security numbers may be used by Defendants for the purposes of this litigation only;
>
> ii. The Defendants may use said social security numbers to inquire in writing with the Social Security Administration for the limited purpose of determining the amount of funds that have been credited to the Plaintiffs' social security numbers as a result of work the Plaintiffs performed specifically for the Defendants, and not for other employers;
>
> iii. The Defendants may not use or communicate said social security numbers or in any other way release said social security numbers to any other entity other than: this Court for the purposes of this litigation, only; the U.S. Social Security Administration for the reasons set forth in [ii] above, and if necessary to substantiate a business expense on any tax return for Defendants to the U.S. Department of Internal Revenue Service and to comply with other rules and regulations of the IRS.

Following the denial of their motion for reconsideration, plaintiffs sought leave to appeal.

II

On appeal, plaintiffs argue that their social security numbers are not relevant in determining the amount of their unpaid wages for work already performed. We agree.

This Court reviews rulings on motions to compel discovery for an abuse of discretion. *Ligouri v Wyandotte Hosp & Med Ctr*, 253 Mich App 372, 375; 655 NW2d 592 (2002). Further, our court rules implement

"an open, broad discovery policy . . . ." *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998). Parties are permitted to obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the lawsuit, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party. MCR 2.302(B)(1).

However, a trial court should also protect the interests of the party opposing discovery so as not to subject that party to excessive, abusive, or irrelevant discovery requests. *In re Hammond Estate*, 215 Mich App 379, 386; 547 NW2d 36 (1996).

In this regard, MCR 2.302(C)[1] provides, in pertinent part:

Protective Orders. On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following orders:

(1) that the discovery not be had;

(2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters . . . .

In the present case, the production of plaintiffs' social security numbers is clearly not relevant in deter-

---

[1] Subrule C is based on FR Civ P 26(c). See 1985 staff comment to MCR 2.302.

mining liability for unpaid wages for the reason that it is the duty of the employer, not the employee, to report earned wages to the federal Wage and Hour Division. 29 USC 211(c). Further, by operation of 29 CFR 516.2, all records of employment must be maintained and preserved by the employer. Accordingly, the amount of wages earned by plaintiffs as reported to the appropriate federal agencies, including the Social Security Administration, would have been reported by defendants, not the plaintiffs. Because this information is known to Ekema and within her possession, the discovery order is irrelevant to the purpose ordered.

Further, we note that the Immigration Reform and Control Act (IRCA) makes it unlawful to knowingly employ undocumented aliens. 8 USC 1324a(a). At the time of hiring, employers are required to verify that each employee is authorized to work in the United States and to complete an employment eligibility verification form, attesting that the employer has examined certain types of documents and has verified that the potential employee is not an unauthorized alien. 8 USC 1324a(b). Civil fines may be imposed on an employer that violates the verification requirements or knowingly employs an unauthorized alien. 8 USC 1324a(e)(4) and (5). A pattern or practice of knowingly employing unauthorized aliens may result in the infliction of criminal punishment. 8 USC 1324a(f). In addition, the IRCA provides that the provisions of 8 USC 1324a preempt any state from imposing civil or criminal sanctions upon those who employ unauthorized aliens. 8 USC 1324a(h)(2). An employer is required to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ." 29 USC 211(c).

For an alien to be "authorized" to work in the United States, the alien must possess a valid "social security account number card," 8 USC 1324a(b)(1)(C)(i), or "other documentation evidencing authorization of employment in the United States which the Attorney General finds, by regulation, to be acceptable for purposes of this section." 8 USC 1324a(b)(1)(C)(ii).

Plaintiffs' complaint alleges, in part, a violation of the FLSA. Therefore, federal case law on the discovery question is instructive. *Auto Club Ins Ass'n v Frederick & Herrud, Inc (After Remand)*, 443 Mich 358, 373 n 24; 505 NW2d 820 (1993); 2 Longhofer, Michigan Court Rules Practice, pp 192-193.

In *Liu v Donna Karan Int'l, Inc*, 207 F Supp 2d 191 (SD NY, 2002), a class of Chinese immigrant workers brought an action against their employer, seeking an FLSA award of unpaid wages. The employer moved to discover the workers' immigration status. The federal district court held that evidence of the Chinese workers' immigration status was not relevant in an FLSA action, emphasizing the difference between an award of post-termination back pay for work not actually performed and FLSA awards of unpaid wages. The court in *Liu* noted that "even if such discovery were relevant, and at this juncture it appears not to be, the risk of injury to the plaintiffs if such information were disclosed outweighs the need for its disclosure." *Id.* at 192-193. Indeed, the court ruled that, even if the parties were to enter into a confidentiality agreement restricting the disclosure of such discovery, as the employer suggested, there would still remain the danger of intimidation and the danger of destroying the cause of action that would inhibit the plaintiffs in pursuing their rights. *Id.* at 193.

Second, in *Flores v Amigon*, 233 F Supp 2d 462 (ED NY, 2002), the case upon which plaintiffs relied heavily,

the employee sought unpaid wages under the FLSA and the employer sought discovery of the employee's immigration documents, social security number, and passport. Like the *Liu* court, the federal district court held that discovery of the employee's immigration status was not relevant to an FLSA claim for unpaid wages for work already performed and that the potential for prejudice from disclosure far outweighed whatever minimal value the information might have. The court reasoned that

> enforcing the FLSA's provisions requiring employers to pay proper wages to undocumented aliens when the work has been performed actually furthers the goal of the IRCA, which requires the employer to discharge any worker upon discovery of the worker's undocumented alien status. 8 U.S.C. § 1324a(a)(2). If employers know that they will not only be subject to civil penalties, 8 U.S.C. § 1324a(e)(4)(A), and criminal prosecution, 8 U.S.C. § 1324a(f)(1), when they hire illegal aliens, but they will also be required to pay them at the same rates as legal workers for work actually performed, there are virtually no incentives left for an employer to hire an undocumented alien in the first instance. Whatever benefit an employer might have . . . gained by paying less than the minimum wage is eliminated and the employer's incentive would be to investigate and obtain proper documentation from each of his workers. [*Id.* at 464 (citations omitted).]

On the basis of the distinction between undocumented workers seeking back pay for wages actually earned and those seeking back pay for work *not* performed, both the *Liu* and *Flores* courts found the cases at bar distinguishable from the decision of the United States Supreme Court in *Hoffman Plastic Compounds, Inc v Nat'l Labor Relations Bd,* 535 US 137, 149; 122 S Ct 1275; 152 L Ed 2d 271 (2002), in which the Court held that awarding back pay to an undocumented alien "for years of work not performed, for wages that could

not lawfully have been earned, and for a job obtained in the first instance by a criminal fraud" ran counter to the federal immigration policy.[2] We agree with the distinction noted by the federal district courts and hold that plaintiffs' social security numbers are not relevant to the limited purpose ordered by the trial court. For this reason, the trial court abused its discretion by compelling production of plaintiffs' social security numbers.

III

As their second issue, plaintiffs argue that the discovery order was an abuse of discretion because discovery was sought for an improper purpose. Again, we agree.

The ostensible purpose of Ekema's discovery request was to determine the amount of plaintiffs' wages that *defendants* reported to the Social Security Administration. Because defendants already have this information, the facial purpose of the discovery request was patently disingenuous. The true motivation for the attempted discovery of plaintiffs' immigration documents and social security numbers can be discerned from defense counsel's statement at the June 2, 2003, hearing that if plaintiffs were unable to produce legitimate immigration documents and social security numbers, "we [will] have a much more complicated lawsuit . . . than plaintiff[s] would like you to believe."

After our review, we conclude that the discovery request by Ekema was made for the improper purpose of intimidating plaintiffs to withdraw their lawsuit and

---

[2] This Court has examined *Hoffman* within the context of a worker's compensation appeal. See *Sanchez v Eagle Alloy, Inc,* 254 Mich App 651, 670-673; 658 NW2d 510 (2003).

forgo their legal rights to recover unpaid wages for work already performed. Because our courts will not sanction discovery for improper purposes, MCR 2.302(C), we hold that the trial court abused its discretion by compelling production of plaintiffs' social security numbers.

IV

Finally, at appellate oral argument, counsel for Ekema appeared to have conceded that the limited purpose for discovery specified in the lower court's order is not legitimate.[3] Nonetheless, counsel argued that plaintiffs' social security numbers *could* have been ordered for purposes of impeachment. In general, issues not preserved and ruled upon by the trial court will not be decided on appeal. *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 471-472; 628 NW2d 577 (2001). Further, the issue counsel raises on appeal is based on speculation and conjecture. Collateral impeachment need not be entertained by either the trial court or this Court. *Wigginton v City of Lansing*, 129 Mich App 53, 63; 341 NW2d 228 (1983); *Cook v Rontal*, 109 Mich App 220, 229; 311 NW2d 333 (1981); MRE 403.[4]

Reversed.

---

[3] During oral argument, appellee's counsel conceded that, after further investigation of the facts and law, the sole issue is one of credibility.

[4] MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."