*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID KILIAN, Individually and as Trustee of the
BERYL KILIAN TRUST, JOHN KILIAN, and
JANICE MCKEE,

        Plaintiffs-Appellants,

v

TCF NATIONAL BANK,

        Defendant-Appellee.

FOR PUBLICATION
October 20, 2022
9:05 a.m.

No. 358761
Benzie Probate Court
LC No. 19-000159-CZ

Before: MARKEY, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

In this action for breach of trust and breach of fiduciary duty, plaintiffs, David Kilian, individually and in his capacity as a Trustee of the Beryl Kilian Trust (the Trust), John Kilian, and Janice McKee, appeal by right the probate court's order granting summary disposition to defendant, TCF National Bank, under MCR 2.116(C)(7) (statute of limitations) and MCR 2.116(C)(10) (no genuine issue of material fact). The trial court concluded that, at the time of defendant's November 2013 report informing plaintiffs of the one-year limitations period for claims for breaches of trust, plaintiffs' potential claims had been adequately disclosed, triggering the one-year limitations period in MCL 700.7905(1)(a) and precluding plaintiffs' claims for actions that occurred between April 2010 and November 2013.[1] We affirm.

## I. FACTUAL BACKGROUND

Plaintiffs are the children of Beryl M. Kilian and the beneficiaries of the Trust. After Beryl's death in 1996, David and Empire National Bank served as cotrustees. Seventy percent of the Trust's assets were set aside in a separate trust for the benefit of David, who struggled with

---

[1] Because many of the parties share the same surname, we will refer to plaintiffs by their given names. Additionally, "defendant" refers to defendant TCF and its predecessors collectively unless otherwise indicated.

mental health issues, and the remainder of the Trust was split between John and Janice. David was entitled to installments of income and property from the Trust. He was also permitted to withdraw an annual amount of the greater of $5,000 or five percent of the value of the Trust in what the parties refer to as a 5x5 distribution. The Trust owned a majority share of Three Pines Resort, and John and Janice owned smaller shares.

In 2000, David removed Empire as cotrustee and appointed as cotrustee defendant TCF's predecessor, Northwestern Bank, which was later acquired by Chemical Bank. Accounts were opened at Northwestern to manage the Trust and resort. Statements for "B. Kilian Trust FBO David Kilian" from January 1, 2001 to March 31, 2014 reflected the beginning market value, receipts, disbursements, gains and losses, and an ending market value for the account and lists in detail each transaction. In the "portfolio assets detail" of the account statements, the Trust's miscellaneous assets were broken down into each parcel of property, with listed market values. For that account, the market value of $1,760,000 was broken down into $488,110 "Tax Cost Basis" and $1,271,890 "Unrealized G/L."[2] Defendant issued similar statements for the "Kilian, Beryl Real Estate Tr Agency" account. Beginning on November 1, 2013, all of the account statements included language that, "under MCL 700.7905(1)(a), a trust beneficiary has one (1) year from the date this report is sent to commence a proceeding claiming breach of trust . . . ."

Between September 28, 2002, and October 3, 2016, David exercised his right to withdraw 5% of the value of the Trust under the 5x5 distribution. Beginning on January 6, 2011, David inconsistently began indicating what amount he was withdrawing. For instance, David indicated that he withdrew $50,000 on January 16, 2011, and $59,567 on October 15, 2012, but did not indicate what value he withdrew on October 17, 2011. In October 2014, David indicated that his withdrawal was calculated from the $1,274,112.91 fair market value of the Trust's financial assets, of which he stated that 5% was $63,706.15. In October 2015 he requested $57,223.77 without stating the basis for the amount. In October 2016, he requested $60,322.95, again stating that the amount was computed from the Trust's financial assets excluding real estate. Each withdrawal was reflected in the account statements.

Contact notes entered by the bank's agent between 2013 and 2017 reflect concern by the property manager about a person whom David had allowed to live in a cottage without a lease, as well as repeated indications that the property was in need of repair. The contact notes also reflect persistent overspending by David, struggles with mental health, and meetings in which David was informed that there was not enough money in the accounts to cover care and maintenance expenses for the resort. In 2016, the contact notes reflect the agent's belief that David was a challenging customer because of frequent overdrafts. The notes also indicated that, in 2017, David sold two of his vehicles to a maintenance person in lieu of payment. Defendant resigned as cotrustee on October 13, 2017, and in November 2017, $488,110 was distributed from the Trust's account.

---

[2] An unrealized gain/loss is "[a]n increase/decrease in the value of a security that is not 'real' because the security has not been sold." Nasdaq, *Unrealized capital gain/loss* <https://www.nasdaq.com/glossary/u/unrealized-capital-gain-loss> (accessed October 10, 2022).

In November 2019, plaintiffs brought this action for breach of trust, waste, breach of fiduciary duty, and fraudulent misrepresentation, claiming that, among other things, defendant had failed to keep adequate records of the Trust's expenses and operations, failed to keep the beneficiaries reasonably informed of the material facts necessary to protect their interests, and mismanaged Three Pines Resort. Plaintiffs alleged that the appraised value of the Trust's real-estate assets remained unchanged despite customary practices to certify appraisals on a regular basis. Plaintiffs also alleged that defendant failed to keep adequate records of expenses and operations and to keep the beneficiaries reasonably informed of the material facts necessary to protect their interests. According to plaintiffs, they had no reason to expect that the financial information they received was incomplete or that the valuations were outdated or inflated. The plaintiffs also asserted that, because some of the resort's maintenance was funded solely by David, whose contributions were not reported in the agency accounts, the true financial condition of the resort had been concealed from them.

Defendant moved for summary disposition, arguing in pertinent part that the statute of limitations barred plaintiffs' claims. Defendant asserted that, beginning in 2014, the monthly account statements informed plaintiffs that if they believed that any duties had been breached, they had one year to commence proceedings for breach of trust. However, plaintiffs did not file their complaint until November 4, 2019, more than a year after the bank's final statement, despite that the previous financial statements had adequately disclosed the bases of plaintiffs' claims.

Concerning plaintiffs' claims arising from events that occurred before April 1, 2010, the court granted summary disposition for defendant on the basis that a provision in the trust documents required a beneficiary to object to an accounting within 90 days from the receipt of the accounting. Concerning plaintiffs' claims arising from events that occurred on or after April 1, 2010—the date that MCL 700.7905 took effect—the trial court granted summary disposition on the basis that the claims were barred by the one-year limitations period in MCL 700.7905(1)(a), which precludes a beneficiary from commencing a proceeding for breach of trust more than one year after the beneficiary or beneficiary's representative "was sent a report that adequately disclosed the existence of a potential claim for breach of trust and informed the trust beneficiary of the time allowed for commencing a proceeding." Plaintiffs appeal the trial court's ruling regarding the application of MCL 700.7905.

## II. GENERAL STANDARD OF REVIEW

This Court reviews de novo questions involving a court's decision on a motion for summary disposition and the interpretation and application of statutes. *Linden v Citizens Ins Co of America*, 308 Mich App 89, 91-92; 862 NW2d 438 (2014). A party is entitled to summary disposition when a claim is barred by the statute of limitations. MCR 2.116(C)(7). When considering a motion under MCR 2.116(C)(7), the court must accept factual pleadings as true unless other evidence contradicts them. *Linden*, 308 Mich App at 92. If there are no questions of fact, whether the claim is barred is a matter of law. *Id*.

## III. NOTICE OF CLAIMS

Plaintiffs argue that, because the account statements before November 2013 did not include language that a beneficiary had one year to file a claim for breach of trust, plaintiffs are permitted

to bring claims related to conduct occurring before November 2013 for up to five years after defendant resigned in October 2017. We conclude that plaintiffs' interpretation of MCL 700.7905 is not consistent with the statutory language, which provides that a beneficiary shall not commence a proceeding against a trustee more than one year after the beneficiary receives a report that adequately discloses claims and informs the beneficiary of the time allowed to commence a proceeding.

MCL 700.7905 provides in relevant part:

(1) The following limitations on commencing proceedings apply in addition to other limitations provided by law:

(a) A trust beneficiary shall not commence a proceeding against a trustee for breach of trust more than 1 year after the date the trust beneficiary or a representative of the trust beneficiary was sent *a report* that adequately disclosed the existence of a potential claim for breach of trust *and informed the trust beneficiary of the time allowed for commencing a proceeding*.

\* \* \*

(3) If subsection (1) does not apply, a judicial proceeding by a trust beneficiary against a trustee for breach of trust shall be commenced within 5 years after the first of the following to occur:

(a) The removal, resignation, or death of the trustee. [Emphasis added.]

When interpreting a statute, this Court's goal is to give effect to the intent of the Legislature. *In re Jajuga Estate*, 312 Mich App 706, 712; 881 NW2d 487 (2015). If the language of the statute is unambiguous, this Court must enforce the statute as written. *Id*. This Court must avoid interpretations that render parts of the statute meaningless. *Id*. "The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999).

In this case, beginning in October 21, 2013, the account statements advised that the recipient should "please review this statement carefully and notify us as soon as possible if there are any discrepancies, questions or concerns." Beginning on November 1, 2013, the statements also stated that, "under MCL 700.7905(1)(a), a trust beneficiary has one (1) year from the date this report is sent to commence a proceeding claiming breach of trust . . . ." The parties do not dispute that the account statements before November 2013 did not inform the beneficiaries of the time allowed to commence a proceeding. However, plaintiffs assert that before November 2013, they did not receive a report disclosing the existence of the potential claim for breach of trust and informing them of the time allowed to commence a proceeding.

MCL 700.7905(1)(a) uses the words "a report" disclosing the existence of potential claims and including the statutory limitations period. The words "the" and "a" have different meanings, because the word "the" is a definite article and the word "a" is an indefinite article. *Robinson v Lansing*, 486 Mich 1, 14; 782 NW2d 171 (2010). The word "a" has general application, while the

word "the" refers to a specific thing. *Id*. Additionally, this Court must consider the object of the statute and apply a reasonable interpretation that best accomplishes its purposes. *Linden*, 308 Mich App at 93. An underlying purpose of the Estates and Protected Individuals Code (EPIC), MCL 700.7101 *et seq.*, is "[t]o simplify and clarify the law concerning the affairs of decedents, missing individuals, protected individuals, minors, and legally incapacitated individuals." MCL 700.1202(a).

Considering the statutory language in its grammatical context and in light of the purposes of EPIC, we reject plaintiffs' argument that they had until five years after Chemical Bank resigned as cotrustee on October 13, 2017, to commence an action for breaches of trust that occurred before they received the one-year statutory notice in November 2013. Plaintiffs' interpretation would make different limitations periods apply depending upon whether a trustee included a notice in one report but not another, even if potential claims had been adequately disclosed in previous reports. This interpretation would not result in simplicity or clarity. We conclude that, if, at the time of the November 2013 statement, the statements adequately disclosed the existence of potential claims for breach of trust before that date, plaintiffs had received "a report" that was consistent with MCL 700.7905(1)(a).

## IV. ADEQUACY OF DISCLOSURE

The issue then becomes whether, in this case, at the time of the November 2013 statement, the existence of plaintiffs' potential claims for breach of trust for actions that defendant took between April 2010 and November 2013 had been adequately disclosed. Plaintiffs argue that they were not reasonably informed of potential breaches of trust because the accounts' statements about the value of the Trust stayed the same for five years and the actual value of the resort was hidden by payments from accounts outside the Trust. We conclude that the information that plaintiffs had at the time of the accountings was sufficient to inform them that they had these potential causes of action.

The question in this case is not whether defendant actually engaged in a breach of trust by mismanaging the resort; the question is whether it was too late for plaintiffs to bring this claim in 2020. In pertinent part, MCL 700.7905(1)(a) provides as follows:

(1) The following limitations on commencing proceedings apply in addition to other limitations provided by law:

(a) A trust beneficiary shall not commence a proceeding against a trustee for breach of trust more than 1 year after the date the trust beneficiary or a representative of the trust beneficiary was sent a report that adequately disclosed the existence of a potential claim for breach of trust and informed the trust beneficiary of the time allowed for commencing a proceeding.

\* \* \*

(2) A report adequately discloses the existence of a potential claim for breach of trust if it provides sufficient information so that the trust beneficiary or

-5-

representative knows of the potential claim *or should have inquired into the potential claim's existence*. [Emphasis added.]

A beneficiary has knowledge if the person has actual knowledge, has received a notice or notification, or, "[f]rom all the facts and circumstances known to the person at the time in question, the person has reason to know it." MCL 700.7104(a).

In *Ducharme v Ducharme*, 305 Mich App 1, 6; 850 NW2d 607 (2014), the plaintiff argued that " '[a]ccountings were not forthcoming from the management of the Trust companies' and that '[r]eports were requested on numerous occasions regarding the management of [a business], without any being provided.' " (First and second alterations in original.) The accountings in that case included statements that provided bank account activity, income disclosure, the cottages, and their contents. *Id*. Additionally, in that case, the plaintiff "objected to every accounting, which indicates that the accountings provided sufficient detail to form the basis of an objection." *Id*. at 9.

We agree with plaintiffs that *Ducharme* is factually distinguishable. In *Ducharme*, this Court relied on the fact that the plaintiff had had enough information to make objections to the accountings because he did in fact object to them, but in this case, there is no indication that plaintiffs objected to the accountings. Because *Ducharme* relied on the plaintiff's objections as a basis for why the accounts in that case were sufficiently detailed, this case is different. In this case, plaintiffs argue that they did not have the expertise to read and understand the reports.[3]

However, we conclude that the account statements in this case adequately disclosed the potential breach of trust claims to plaintiffs. Plaintiffs alleged that, because the real-estate value remained unchanged, defendant disregarded customary practices to refresh certified appraisals on a regular basis. The value of the real-estate account was clearly indicated in at least one statement every year. The yearly market values were as follows: $1,221,600 on January 1, 2001; $1,287,600 from January 1, 2002 to January 1, 2003; $1,853,800 from January 1, 2004 to January 1, 2009 (a five-year period); $587,200 from January 1, 2010 to January 1, 2013 (a three-year period); $240,000 from August 1, 2013 to January 1, 2016 (a three-and-a-half-year period). The static market values in the statements adequately informed plaintiffs of any potential claim that defendant was not updating the market values frequently.

Plaintiffs also asserted that they were not informed of their claims that David was improperly withdrawing amounts from the Trust as part of his 5x5 distributions. We disagree because both the values of the Trust and the amounts of the 5x5 distributions were clearly stated on the account summaries. Plaintiffs could have engaged in simple multiplication to determine whether David was properly withdrawing 5% of the stated trust value each year, and again, they

---

[3] We have also considered plaintiffs' foreign caselaw and opine that none of these cases are persuasive. This case does not involve worthless promissory notes, like in *Turkish v Brody*, 221 So3d 1206, 1215 (Fla App, 2016), an outright lie that inspections had been conducted that had not in fact been conducted, like in *Meyers v First Tennessee Bank*, 503 SW3d 365, 381-382 (Tenn App, 2016), or a plaintiff who did not even know that a trust existed, like in *Techner v Greenberg*, 553 F Appx 495, 499 (CA 6, 2014).

only had to review the statements to see that the stated value of the Trust was not decreasing despite those withdrawals. Because plaintiffs had both the value of the trust and the amount of the 5x5 distributions, they were reasonably informed of any possible claim that David was making improper withdrawals.

Plaintiffs alleged that defendant's statements did not adequately inform the contingent beneficiaries of potential claims because the account statements did not reflect that the resort was being mismanaged. For the purposes of the statute of limitations, because the reports provided a detailed line-item list of income and expenditures, we conclude that the beneficiaries had enough information to inquire about whether the resort was being mismanaged.

"[A] fiduciary has a duty to act for the benefit of the principal regarding matters within the scope of the relationship." *Prentis Family Foundation, Inc v Karmanos Cancer Institute*, 266 Mich App 39, 43; 698 NW2d 900 (2005). "In general, the duties imposed on the trustee are determined by consideration of the trust, the relevant probate statutes and the relevant case law." *In re Green Charitable Trust*, 172 Mich App 298, 312; 431 NW2d 492 (1988).

Again, the account statements in this case specifically listed each transaction related to each account. As previously discussed, the statements indicated that the market value of the Trust remained the same for years at a time, which should have led the contingent beneficiaries to question the value of the property. Further, each account statement reflects in detail the amounts paid and received. The beneficiaries needed only to look at the statements to determine whether the amounts paid and received matched up. And while plaintiffs argue that they were not reasonably informed of their possible claims because some expenses were hidden, such as when David paid a maintenance worker with his car, the expenses themselves were not hidden because the transaction details in the account statements reflect the maintenance worker's charges. Regardless, David did not sell his car to pay for maintenance until 2017, outside the time period at issue. The fact that expenses were accruing and not being paid would have led a reasonable person to inquire into the existence of a claim.

To the extent that plaintiffs argue that a trustee's duties should include taking reasonable measures to ensure that information is clearly understood by beneficiaries, the statute does not require this. MCL 700.7905(1)(a) provides that a one-year limitations period applies when a report "adequately disclosed" the existence of a potential claim for breach of trust. Again, a report adequately discloses a potential claim "if it provides sufficient information so that the trust beneficiary or representative knows of the potential claim *or should have inquired into the potential claim's existence*." MCL 700.7905(2) (emphasis added).

Plaintiffs' expert stated that defendant's statements "contain[ed] the customary income, expense, and asset reporting." However, he opined that the trustees should have augmented the accounting data, explained or justified the decisions that were made, and provided the reader with "a benchmark to evaluate if the numbers are good, bad or indifferent." The expert also opined that defendant's account reports failed to provide sufficient detail, plans, or projected gains and losses to adequately disclose the material facts on which a beneficiary would rely to protect any interests. But again, the question is not whether defendant engaged in the best practices; the question is whether, from the information that plaintiffs had, they should have known whether to inquire about potential claims. We conclude that the statements were sufficient.

Plaintiffs further argue that David did not have notice of transactions because he was not opening his mail and that defendant knew this fact. "[G]enerally, the appellant bears the burden of furnishing the reviewing court with a record that verifies the basis of any argument on which reversal or other claim for appellate relief is predicated." *Petraszewsky v Keeth*, 201 Mich App 535, 540; 506 NW2d 890 (1993). Plaintiffs cite the contact notes on November 2, 2016, to support this assertion, but when considered in context, plaintiffs' assertion is overly broad. When the bank's agent asked David whether he had received checks that had been mailed, the notes indicate that David "[said] he has not gotten his checks yet but he does not open up all his mail when he gets it." Opening one's mail belatedly is not the equivalent of failing to receive it. We decline to consider, as a hypothetical, whether an institutional defendant's knowledge that a beneficiary is not receiving statements may affect whether potential breaches were adequately disclosed.

## V. ADDITIONAL ARGUMENTS

Plaintiffs argue that the probate court abused its discretion when it determined that it was not necessary for plaintiffs to discover a 2013 appraisal of the property for the purposes of discovery related to the statute of limitations. We conclude that the probate court's decision did not fall outside the range of principled outcomes.

This Court reviews for an abuse of discretion the trial court's decision on a discovery motion. *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Despite Michigan's broad discovery policy, the trial court should protect parties from "excessive, abusive, or irrelevant discovery requests." *Cabrera v Ekema*, 265 Mich App 402, 407; 695 NW2d 78 (2005). Under MCR 2.302(C), a party may move the trial court for a protective order that seeks to limit the scope of discovery if good cause has been shown. In this case, the probate court limited the scope of discovery by excluding a 2013 appraisal of the property. Again, the question for the purposes of the statute of limitations was whether plaintiffs had enough information available to them to determine whether they knew or should have known that they had a possible claim for breach of trust. See MCL 700.7905(1)(a). Because this question is resolved by considering the information that plaintiffs actually had, discovery of information that plaintiffs did *not* have could not have helped to resolve whether summary disposition would be appropriate on statute-of-limitations grounds.

Plaintiffs argue that the probate court erred by dismissing their personal claims, which were subject to either three- or six-year limitations periods. This argument is not preserved because plaintiffs did not raise their argument regarding their individual claims until this appeal. We conclude that plaintiffs have not demonstrated any error, much less a plain error.

A plaintiff must preserve an issue for appeal by raising it before the lower court. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). This Court reviews unpreserved issues for plain error affecting a party's substantial rights. *Duray Dev, LLC v Perrin*, 288 Mich App 143, 150; 792 NW2d 749 (2010). An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings. *Id.*

In its motion for summary disposition, defendant argued that *all* of plaintiffs' claims were barred by the statute of limitations, and specifically argued that breaches of trust could not be established for John's and Janice's interests in the resort, which were not ownership interests that defendant held in trust. In response to defendant's motion, plaintiffs did not argue or establish that they had stated specific, individual claims that the probate court should not dismiss. Regardless, it is not apparent from the complaint that John and Janice asserted any claims that were not dependent on defendant's having breached fiduciary duties. Because the statute of limitations precluded plaintiffs from raising claims related to defendant's fiduciary duties, the probate court did not clearly or obviously err by granting summary disposition of the entire complaint, particularly when plaintiffs did not oppose the motion on that basis.

Finally, because we have addressed plaintiffs' issues on their merits, we decline to address defendant's argument regarding the interaction of the 90-day provision in the trust documents with the statute of limitations and plaintiffs' related counterarguments.

## VI. CONCLUSION

If a beneficiary has received a report that informs the beneficiary of the one-year limitations period in MCL 700.7905, the beneficiary has one year to commence a proceeding for potential claims for breach of trust that the beneficiary knew of or should have inquired into at that time. The probate court properly concluded that plaintiffs in this case were barred from bringing an action in November 2019 related to actions that defendant took between April 2010 and November 2013, because plaintiffs had received notice of the one-year limitations period in a November 2013 report and should have inquired into the existence of their potential claims for breach of trust at that time.

Affirmed.

/s/ Jane E. Markey
/s/ David H. Sawyer
/s/ Mark T. Boonstra