*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW JAMES CRAIG,

      Plaintiff-Appellant,

v

JAMIE ELIZABETH BECKER,

      Defendant-Appellee.

UNPUBLISHED
December 21, 2023

No. 364931
Livingston Circuit Court
Family Division
LC No. 21-056341-DC

Before: BORRELLO, P.J., and SWARTZLE and PATEL, JJ.

PER CURIAM.

In this custody dispute, plaintiff appeals as of right the trial court's judgment awarding the parties joint physical and legal custody of their minor child, determining a parenting-time schedule, and awarding defendant monthly child support. The parenting-time determination is at issue in this appeal. We affirm.

## I. BACKGROUND

The parties are unmarried and share a minor child, who was born in March 2017. Plaintiff signed an affidavit of parentage at the child's birth. Plaintiff also has another son with his ex-wife.

The parties' relationship ended when the child was nearly two years old. Before the relationship ended, defendant and the child shared their time between plaintiff's home and defendant's parents' home. Subsequently, defendant and the child resided solely at defendant's parents' home. The parties had an informal agreement regarding parenting time. Beginning in May 2019, plaintiff had parenting time on (1) Tuesdays from after daycare/preschool through dinner, (2) every other Wednesday from after daycare/preschool through dinner, and (3) every other weekend.

In July 2021, defendant filed a complaint seeking child support. In August 2021, plaintiff filed a complaint seeking joint physical and legal custody of the child and parenting time. Defendant objected to plaintiff's request for joint physical and legal custody. She did not object to the establishment of a parenting-time schedule. Defendant requested a temporary order for custody, parenting time, and child support. The parties attended a "Facilitative and Information

Gathering Conference" (FIGC), a Friend of the Court alternative dispute resolution proceeding, in September 2021. The parties agreed at the FIGC to share joint legal custody, but they did not agree on physical custody or parenting time.[1] The trial court entered a temporary order on October 1, 2021, awarding the parties joint physical and legal custody. The court also awarded plaintiff parenting time on alternate weekends, one midweek overnight parenting time on Tuesday, and two midweek overnight parenting times during the week when plaintiff did not have weekend parenting time.[2]

Defendant objected to the physical custody and parenting-time provisions in the temporary order. On January 31, 2022, the court entered a consent order to modify the temporary order to establish a holiday and summer parenting-time schedule. Following a status conference on February 25, 2022, the court scheduled a bench trial for June 2022.

On May 26, 2022, plaintiff filed a motion in limine arguing that defendant should be precluded from calling any witnesses not identified in her initial witness list because he would be deprived of the opportunity for appropriate discovery or preparation with respect to any additional witnesses. The next day, on May 27, 2022, defendant filed a supplemental witness list identifying ten additional witnesses that were not included in her initial witness list.[3] In response to plaintiff's motion, defendant maintained that her witness list was "timely served via this Court's scheduling orders." The trial court declined to strike the newly added witnesses, finding that the sanction was too harsh. Instead, the court gave the parties 45 days for discovery regarding the witnesses. The court also adjourned the trial, finding "good cause to do so based upon the more specific witness list that was filed on behalf of Defendant that lists more than just family members[.]"

During discovery related to the additional witnesses, plaintiff made a request for production of documents that included text messages between defendant and her parents and between defendant and plaintiff's ex-wife to demonstrate the vitriol that each of those persons displayed against plaintiff. Defendant complied with the production request, but some of the documents were redacted. The trial court ordered defendant to produce unredacted copies of the documents plaintiff sought. During her deposition, however, defendant testified that she had deleted some text messages from her phone to free up storage space on her phone and to protect passwords and account numbers. Plaintiff, speculating that the unproduced text messages contained additional evidence of vitriol against him, sought a forensic examination of defendant's electronically stored information (ESI). In the alternative, he sought a "negative inference that . . . these text messages would continue to show the same vitriol" against him. The trial court declined to order a forensic evaluation of defendant's phone. But the court stated that if plaintiff could show during trial that

---

[1] Plaintiff sought joint physical custody of the child, with parenting time shared equally. Defendant sought sole physical custody and preferred to limit overnight visits to four monthly visits on alternating weekends along with midweek daytime visits.

[2] The temporary order also incorporated by reference a temporary uniform child support order. The child support order is not at issue here.

[3] Only five of the additional witnesses were ultimately challenged by plaintiff.

he suffered prejudice by being unable to challenge defendant's evidence as a result of the loss of the text messages, the court would consider "making an adverse inference against [defendant]."

The court held a six-day bench trial in November 2022. At trial, plaintiff sought joint physical and legal custody of the child and an increase in parenting time that would provide him with equal parenting time in accordance with a schedule that his counsel proposed. Defendant agreed that the parties should have joint legal custody, but she sought physical custody as well as a reduction in plaintiff's parenting time and a return to the parenting-time schedule as it existed prior to entry of the October 1, 2021 temporary order.

Plaintiff testified on his own behalf and also presented testimony from his girlfriend, Ashley Roberts, from Roberts's ex-husband, Ben Roberts, and from his father, Daniel Patrick. Defendant testified on her own behalf and called no witnesses. The trial court issued a written opinion on January 3, 2023. The court analyzed each best-interest factor in MCL 722.23 and found that factors (a), (c), (d), (e), (f), (g), (h), and (k) favored the parties equally,[4] that factor (b) favored defendant slightly, that factor (i) was not applicable because the child was too young to express a preference, and that factor (j) favored neither party. Under factor (*l*), the court found that there was no dispute that the parties should share legal custody. The court found that joint legal and physical custody was in the child's best interests. The court also addressed each of the factors in MCL 722.27a(7) before determining a parenting-time schedule that would be in the child's best interests. The court awarded plaintiff parenting time on alternate weekends, one midweek overnight parenting time on Tuesday, and two midweek overnight parenting times during the week when plaintiff did not have weekend parenting time.

## II. LATE ADDITIONS TO THE WITNESS LIST

Plaintiff argues that the trial court abused its discretion by allowing defendant to add previously unidentified witnesses to her witness list 17 days before trial was set to begin.[5]

A trial court's decision whether to allow a party to add a witness is generally reviewed for an abuse of discretion. *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1992). But this issue is moot because defendant did not call any of the additional witnesses to testify at trial. There is no relief that this Court can grant on appeal. See *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 472; 761 NW2d 846 (2008) (stating that an issue becomes moot when an event occurs that renders it impossible for the reviewing court to grant relief).[6]

---

[4] These factors are not at issue in this appeal.

[5] Plaintiff also argues that the trial court violated the court rules by failing to set a date for the exchange of witness lists. Plaintiff did not raise this issue in the trial court and thus it is waived. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 3.

[6] Even if we were to conclude that the trial court abused its discretion by finding good cause under MCR 2.401(I)(2) to adjourn the trial and give the parties 45 days for discovery regarding the

## III. DISCOVERY

In a related argument, plaintiff argues that the trial court abused its discretion by not compelling defendant to produce text messages that she intentionally deleted from her phone during the discovery period. We disagree.

A trial court's decision on a motion to compel discovery is reviewed for an abuse of discretion. *Cabrera v Ekema*, 265 Mich App 402, 406; 695 NW2d 78 (2005).

Under MCR 2.302(B)(1), parties "may obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case, taking into account all pertinent factors, including whether the burden or expense of the proposed discovery outweighs its likely benefit, the complexity of the case, the importance of the issues at stake in the action, the amount in controversy, and the parties' resources and access to relevant information." MCR 2.313(D) addresses the failure to preserve ESI. The court rule states:

> (D) Failure to Preserve ESI. If ESI that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation, may order appropriate remedies, including:
>
> (a) a presumption that the lost information was unfavorable to the party;
>
> (b) a jury instruction directing that the jury may or must presume the information was unfavorable to the party; or
>
> (c) dismissal of the action or entry of a default judgment.

In this case, the trial court found that ordering defendant to acquire and produce all text messages was not proportional to the needs of the case and that a forensic evaluation of defendant's phone was outside the bounds of proportionality. It found that defendant's testimony that she deleted some messages "did not reveal any malicious or intentional destruction of evidence in this case, and so hiring a professional to examine her devices amounts to a fishing expedition." The

---

witnesses, see *Pastrick v Gen Tel Co of Mich and Sub-Surface Constr Co*, 162 Mich App 243, 245; 412 NW2d 279 (1987) ("Where justice so requires, a trial court should not be reluctant to allow an unlisted witness to testify"), the only remedy that we could provide would be a remand for a new trial with the exclusion of the additional witnesses. But this already occurred since none of those witnesses testified at trial.

court found, after review of defendant's deposition testimony, that plaintiff mischaracterized defendant's deletion of text messages and that the deletion of text messages was not intentional spoliation of evidence. The court did find, however, that defendant's deletion of some text messages after her counsel was served with the request to produce was "concerning" and that defendant should have preserved all of her text messages. The court said that if plaintiff could show during trial that he suffered prejudice by being unable to challenge defendant's evidence as a result of the loss of the text messages, the court would consider "making an adverse inference against [defendant]." This is the alternative remedy that plaintiff requested, which is consistent with MCR 2.313(D). We find that the trial court's decision not to compel defendant to undergo a forensic examination of her ESI and to employ against defendant a negative inference if plaintiff demonstrated prejudice during trial was not an abuse of discretion.

Plaintiff also argues that the trial court failed to draw any negative inferences in its findings. Again, defendant did not call the additional witnesses at trial. Therefore, the potential concern—that plaintiff would be unable to challenge defendant's evidence as a result of the loss of the text messages—did not arise. Additionally, because the witnesses were not called, their credibility was not at issue.[7]

## IV. BEST INTERESTS OF THE CHILD AND PARENTING TIME

Plaintiff argues that the trial court's findings regarding best-interest factors (b) and (j) were against the great weight of the evidence and that the trial court abused its discretion by failing to fashion a parenting-time schedule that was in the child's best interests. We disagree.

> In matters involving child custody, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. This Court will not interfere with the trial court's factual findings unless the facts clearly preponderate in the opposite direction. Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion. In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic. Clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law. This Court reviews the trial court's determination regarding a child's best interests for clear error. This Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments. [*Brown v Brown*, 332 Mich App 1, 8-9; 955 NW2d 515 (2020) (cleaned up).]

---

[7] Nonetheless, despite the court's finding that "whether a parent vents to her parents about her personal dislike and/or frustration with the minor child's other parent is not probative on the issue before the Court," plaintiff's counsel vigorously cross-examined defendant using the text messages between herself and her parents and between herself and plaintiff's ex-wife that were produced.

"Similarly, orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Stoudemire v Thomas*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 360441); slip op at 4 (cleaned up). "In child custody cases, an abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*. at __; slip op at 4 (cleaned up).

A trial court may modify or amend its previous orders or judgments regarding child custody "for proper cause shown or because of change of circumstances" if it is in the best interests of the child. MCL 722.27(1)(c).[8] A trial court must determine "whether the child has an established custodial environment with one or both parents" before making a custody determination, *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020), because that decision will determine the appropriate burden of proof. A custodial environment can be established as a result of a temporary custody order. *Berger v Berger*, 277 Mich App 700, 707; 747 NW2d 36 (2008). In this case, the trial court found, and there was no dispute at trial and there is no dispute on appeal, that an established custodial environment existed with both parties at the time of trial. Because plaintiff's request for 50/50 parenting time would not alter the child's established custodial environment, the trial court properly determined that plaintiff was required to establish by a preponderance of the evidence that his proposed change was in the child's best interests. See *Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010) ("If the proposed change does not change the custodial environment, . . . the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests.").

After a trial court identifies the proper burden of proof, it is required to evaluate the proposed change in light of the child's bests interests. *Lieberman v Orr*, 319 Mich App 68, 84; 900 NW2d 130 (2017). The focus of parenting time is to foster a strong relationship between the child and the child's parents. *Shade*, 291 Mich App at 29. A court bases a parenting-time order on its determination of the best interests of the child, and it grants parenting time "in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." MCL 722.27a(1). The trial court may consider the factors in MCL 722.27a(7), along with the best-interest factors provided in MCL 722.23, when granting parenting time. *Shade*, 291 Mich App at 31. "Custody decisions require findings under all of the best interest factors, but parenting time decisions may be made with findings on only the contested issues." *Id*. at 31-32.

According to MCL 722.23, the "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the trial court:

---

[8] Because this case involves an initial custody determination, the trial court was not required to find proper cause or a change of circumstances. See *Thompson v Thompson*, 261 Mich App 353, 361; 683 NW2d 250 (2004) (providing that a party does not need to establish proper cause or a change in circumstances for "the trial court's initial or 'new' custody order").

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.  A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

Findings and conclusions regarding the best-interest factors "need not include consideration of every piece of evidence entered and argument raised by the parties." *MacIntyre v MacIntyre*, 267 Mich App 449, 452; 705 NW2d 144 (2005), rev'd in part on other grounds 472 Mich 882 (2005).  But "the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *Id*.  A trial court has discretion consider the relative weight of each of these factors under the circumstances and is not required to give each factor equal weight. *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006).  A trial court is "duty-bound to examine all the criteria in the ultimate light of the child's best interests." *Id*. (quotation marks and citation omitted).

Plaintiff challenges only the trial court's findings regarding best-interest factors (b) and (j). The trial court found that factor (b) slightly favored defendant. Factor (b) considers the capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any. The court found that both parties had the capacity and disposition to give the child love, affection, and guidance. The court noted, however, defendant's testimony that plaintiff never had an interest in religion and that she was raised Catholic and discussed with plaintiff that she wanted the child to be baptized at St. Mary Magdalene Catholic Church. The court also noted plaintiff's testimony that he took the child to two nondenominational churches without telling defendant. The court additionally noted that the testimony supported that defendant was more involved in the child's academic affairs.

Plaintiff argues that his decision to bring the child to church without consulting defendant was not relevant to his capacity to give the child love, affection, and guidance, and had only tangential relevance to his capacity and disposition to continue the education and raising of the child in his religion. He contends, therefore, that the trial court improperly considered that he brought the child to church without consulting defendant under factor (b). He contends that the trial court should have considered this under factor (j). However, a single circumstance can be relevant to and considered in determining more than one of the best-interest factors. *Fletcher v Fletcher*, 229 Mich App 19, 25; 581 NW2d 11 (1988). The court considered that plaintiff took the child to nondenominational churches without consulting defendant while knowing that defendant wanted the child to be raised Catholic. This consideration is relevant to a determination of whether plaintiff would raise the child in his religion.

Evidence was presented that defendant was Catholic, that plaintiff was aware that she was Catholic, and that defendant discussed with plaintiff that she wanted the child to be baptized at St. Mary Magdalene Catholic Church. The court's failure to mention testimony that plaintiff took the child to the churches that he attended with his girlfriend does not mean that the court did not take the testimony into consideration. There was no testimony that plaintiff intended to raise the child in any particular religion. Evidence was also presented that defendant helped the child with his homework and that plaintiff did not. Although plaintiff testified that the child frequently worked in an activity book and pretended to do homework with his older brother after school when he was younger, plaintiff did not testify that he helped the child with the activity book. The evidence presented supports the trial court's findings regarding factor (b) and did not clearly preponderate in the opposite direction.

The trial court found that factor (j) favored neither party. Factor (j) considers the willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. Plaintiff first argues that the trial court specifically identified the ways by which plaintiff encouraged the child's relationship with defendant, but the court failed to identify a single thing that defendant did to support the child's relationship with plaintiff. Therefore, he contends, the court's findings did not support the court's conclusion that neither party was favored. He contends, instead, that he "should be heavily favored."

The trial court's findings recognized plaintiff's testimony regarding ways in which he encouraged the child's relationship with defendant. Indeed, plaintiff was specifically asked on

cross-examination about each of the best-interest factors, and with respect to factor (j) he was asked how he encouraged the child's relationship. The trial court's findings reflected plaintiff's testimony. Defendant was not specifically questioned about how she encouraged the child's relationship with plaintiff. Nonetheless, defendant's testimony showed that when the child was resisting parenting time with plaintiff she encouraged him to go and went so far as to put the child into plaintiff's car and walk away. She also testified that when plaintiff called to talk to the child and the child was involved in something at the time, she would have the child return plaintiff's call when he was finished. The trial court also found that that the parties did not communicate well and that "it was clear to the court that the parties['] hatred and mistrust for one another was on full display."

Plaintiff argues that the court failed to consider select evidence that plaintiff has cherry-picked from the testimony and contends, therefore, that the trial court's findings regarding factor (j) were against the great weight of the evidence. Again, the trial court's findings and conclusions regarding the best-interest factors "need not include consideration of every piece of evidence entered and argument raised by the parties." *MacIntyre*, 267 Mich App at 452. The trial court's finding that factor (j) favored neither party was supported by the evidence.

MCL 722.27a articulates the factors that the trial court "may consider . . . when determining the frequency, duration, and type of parenting time to be granted[.]" *Shade*, 291 Mich App at 29. It states, in relevant part:

> (1) Parenting time shall be granted in accordance with the best interests of the child. It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents. Except as otherwise provided in this section, parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.
>
> * * *
>
> (7) The court may consider the following factors when determining the frequency, duration, and type of parenting time to be granted:
>
> (a) The existence of any special circumstances or needs of the child.
>
> (b) Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.
>
> (c) The reasonable likelihood of abuse or neglect of the child during parenting time.
>
> (d) The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.
>
> (e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.

(f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.

(g) Whether a parent has frequently failed to exercise reasonable parenting time.

(h) The threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal custody. A custodial parent's temporary residence with the child in a domestic violence shelter shall not be construed as evidence of the custodial parent's intent to retain or conceal the child from the other parent.

(i) Any other relevant factors.

The court found that factors (a), (b), (e), and (h) were not relevant. The court considered factor (c) and found no evidence of neglect or abuse by either party. The court considered factor (d) and found no reasonable likelihood that either party would be abused by the exercise of parenting time. The court considered factor (f) and found that both parties could reasonably be expected to exercise parenting time in accordance with the court order. The court considered factor (g) and found that neither party had failed to exercise their respective parenting time. The court considered factor (h) and found no evidence regarding the threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal custody. Under factor (i), the court said that it recognized that plaintiff requested that his parenting time be increased from the schedule proposed by the FIGC and that defendant requested that plaintiff's parenting time be decreased from that schedule.[9] The court found that "the evidence simply did not support either parties [sic] request."

The court found "the following parenting time schedule to be in [the child's] best interest." The court ordered that "parenting time for both parents shall be as follows, with [defendant] to receive all parenting time not specifically awarded to [plaintiff]:"

Plaintiff Father shall have parenting time on alternate weekends from after school on Friday to Sunday evenings at 6:30 p.m., and one mid-week overnight of parenting time every Tuesday after school until drop-off at school on Wednesday morning, or 8:00 a.m. if there is no school. And on the week in which Plaintiff Father did not have parenting time, his parenting time shall include two mid-week overnights after school on Tuesday, or if there is no school, at 4:00 p.m. until drop-off on—at school at Thursday, or 8:00 a.m. if there is no school.

---

[9] Plaintiff's proposal would have increased his overnights from 36% of the calendar year to 50% of the calendar year, and would have reduced defendant's overnights from 64% to 50% of the calendar year. Defendant's proposal would have increased her overnights from 64% to 74% of the calendar year, and would have reduced plaintiff's overnights from 36% to 26% of the calendar year.

The court also incorporated by reference the uncontested holiday and summer parenting-time schedule set forth by the parties' prior consent order.

Plaintiff argues that the trial court failed to make detailed findings regarding the child's best interests.[10] He contends that the trial court's order "simply created a parenting time schedule that was nearly identical with the schedule the parties were operating under when [plaintiff] filed his complaint." Contrary to plaintiff's contention, the parenting-time schedule that the parties were using at the time plaintiff filed his complaint was not the same as the parenting-time schedule proposed by the FIGC and adopted by the court in the October 2021 order. Nevertheless, the trial court did not simply adopt the FIGC's proposed order. The court held a hearing and made findings on the best-interest factors. The court also addressed each of the factors in MCL 722.27a and made findings on the relevant factors. The court acknowledged that it had to determine a parenting-time schedule that was in the best interests of the child. The court fashioned a parenting-time schedule that it found to be in the best interests of that child at that time. While plaintiff disagrees with this schedule, he has failed to show that the trial court's parenting-time determination was palpably and grossly violative of fact and logic.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Sima G. Patel

---

[10] Plaintiff also argues that if the trial court had considered the child's best interests it would have considered the child's need for fewer transitions. While there was testimony that the child had issues with transitions after the October 2021 order for custody and parenting time was entered, at the time of trial in November 2022 defendant testified that transitions were "smoother." Further, the parenting-time schedule proposed by plaintiff's counsel during opening statements would have also resulted in frequent transitions.