*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KURT GRIGGS-SWANSON,

        Plaintiff-Appellant,

v

BEAUMONT HOSPITAL FARMINGTON HILLS,
BOTSFORD GENERAL HOSPITAL, and JOHN
DOE EMPLOYEE #1,

        Defendants-Appellees.

UNPUBLISHED
May 30, 2024

No. 364134
Oakland Circuit Court
LC No. 2021-186548-NO

Before: BORRELLO, P.J., and SWARTZLE and YOUNG, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants, Beaumont Hospital Farmington Hills, formerly Botsford General Hospital ("the Hospital"), and an unnamed security officer, pursuant to MCR 2.116(C)(10), and thereby dismissing plaintiff's claims for assault and battery against the unnamed officer and negligence and respondeat-superior liability against the Hospital. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises from events at the Hospital on March 31, 2020, during the early onset of the COVID-19 pandemic. Plaintiff alleges that he was experiencing symptoms consistent with the COVID-19 virus. Because his condition was getting worse, he called 911 and was transported by ambulance to the Hospital, which had set up an outside tent to screen patients for the virus. Patients were screened either individually inside the tent or while remaining inside their vehicles. Plaintiff was evaluated by a nurse and doctor. Although plaintiff had symptoms consistent with COVID-19, because his vital signs and condition were deemed stable, resources were limited, and plaintiff was not deemed critically ill, he was not tested for the COVIV-19 virus or admitted to the Hospital. Instead, he was prescribed a medication and informed that he was being discharged. Because plaintiff had been transported to the hospital by ambulance, he did not initially know how to leave or know where to go. He had been living with his sister and her family, but he explained

that he did not want to expose them to the virus. He complained to Hospital staff that he had nowhere to go and asked to speak to a social worker, but he was told that a social worker was not available.

Before going to the Hospital, plaintiff called a coworker and he remained on his phone with two coworkers during the duration of his time at the Hospital. Plaintiff remained in the tent area at the Hospital for approximately two hours after he was discharged. Eventually, because plaintiff would not leave, security was contacted. When security officers arrived, they initially spoke to plaintiff and encouraged him to leave voluntarily. Plaintiff admitted that he was told that he was not going to be admitted and had been discharged, and he knew that he had to leave the tent, but he said that he did not know where he could go. Eventually, the officers began to remove plaintiff from the tent. Plaintiff agreed that he required the physical assistance of the security officers to leave the tent and that two officers helped him get up to walk out of the tent. However, according to plaintiff, he was forcefully removed from the tent by the security officers.

Upon leaving the tent, plaintiff fell down just outside the tent. Defendants' witnesses described plaintiff as intentionally flopping down on the ground, while plaintiff described losing his balance and falling after the officers removed their hands from him because he could not stand without their assistance. Plaintiff admitted that after falling to the ground, he needed help getting up. Plaintiff claimed that the officers yelled at him to get up on his own and then intervened when he was unable to do so. According to plaintiff, the officers twisted and pushed his wrist and leg, causing him pain, and dragged him approximately 20 feet along the concrete, causing injuries to his back and side. Plaintiff, who weighed approximately 300 pounds, admitted that he could not assist the officers in getting himself off the ground and that he was "dead weight." He agreed that the officers were trying to lift him off the ground, which was not easy to do. Although the officers claimed that they moved plaintiff a short distance because he was near a line of cars waiting for COVID-19 screening, plaintiff denied that he was in any danger from the cars. In any event, after plaintiff was moved, officers assisted him in getting into a wheelchair and plaintiff was then taken to an indoor lobby at the Hospital. Plaintiff's coworker contacted his mother who eventually arrived to pick plaintiff up from the Hospital lobby and plaintiff's work supervisor arranged for plaintiff to stay in a hotel. Plaintiff was admitted to another hospital approximately four days later with COVID-19.

Plaintiff filed this action, asserting a claim for assault and battery against an unnamed security officer, and asserting that the Hospital was liable for the officer's conduct under a theory of respondeat superior. Plaintiff also asserted claims against the Hospital for the negligent hiring, retention, and supervision of its security staff, and for its negligent training of its security personnel.

The trial court granted defendants' motion for summary disposition under MCR 2.116(C)(10), first ruling that the Hospital could not be held liable for any negligence by its security officers related to plaintiff's removal from the tent because of the immunity granted by the Pandemic Health Care Immunity Act (PHCIA), MCL 691.1471 *et seq*. The court further held, however, that even viewing the evidence in a light most favorable to plaintiff, the Hospital could not be vicariously liable for the officers' conduct because there was no evidence to support a finding that the officers' actions were unreasonable under the circumstances. Additionally, the court found that plaintiff failed to establish factual support for his claim that the Hospital was

negligent in its hiring, retention, and supervision of its security staff because there was no evidence that the Hospital had knowledge of any facts that would indicate that any of the involved officers were not competent or qualified to deal with the public. The court also found that the Hospital had presented evidence demonstrating that its security officers received appropriate training, both when beginning employment and regularly thereafter, and plaintiff had not presented evidence to establish a genuine issue of material fact whether the training that was provided deviated from an appropriate standard of care for the security industry. Accordingly, the court dismissed plaintiff's negligent-training claim. Finally, the court dismissed plaintiff's assault and battery claim, ruling that there was no genuine issue of material fact whether any physical touching of plaintiff was done with an intent to cause injury, and that, even viewed in a light most favorable to plaintiff, the evidence established that the officers' touching of plaintiff was done for the legitimate purpose of facilitating plaintiff's removal from the tent and getting him off the ground and out of harm's way.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). The trial court dismissed all claims under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual support for a claim. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016). When reviewing a motion under MCR 2.116(C)(10), "a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. Summary disposition is appropriate under MCR 2.116(C)(10) when, viewing the evidence submitted by the parties in the light most favorable to the party opposing the motion, "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." *Id.*

## III. THE HOSPITAL'S VICARIOUS LIABILITY FOR THE CONDUCT OF ITS SECURITY OFFICERS

Plaintiff alleged that the Hospital was vicariously liable for the conduct of its security officers under a theory of respondeat superior. The trial court dismissed this claim in part on the basis of its determination that the Hospital was entitled to immunity under § 5 of the PHCIA, MCL 691.1475, which provides:

> A health care provider or health care facility that provides health care services in support of this state's response to the COVID-19 pandemic is not liable for an injury, including death, sustained by an individual by reason of those services, regardless of how, under what circumstances, or by what cause those injuries are sustained, unless it is established that the provision of the services constituted willful misconduct, gross negligence, intentional and willful criminal misconduct, or intentional infliction of harm by the health care provider or health care facility.

Although the PHCIA was adopted by 2020 PA 240, effective October 22, 2020, the act provides that "[t]he liability protection provided by this act applies retroactively, and applies on or after March 29, 2020 and before July 14, 2020." MCL 691.1477. The conduct in this case occurred on March 31, 2020, within the statutory timeframe.

Plaintiff disputes that the PHCIA applies to the conduct at issue in this case. In *Hmeidan v State Farm Mut Auto Ins Co*, 326 Mich App 467, 478; 928 NW2d 258 (2018), this Court explained:

> The overall goal of statutory interpretation is to give effect to the intent of the Legislature. *Garfield Mart, Inc v Dep't of Treasury*, 320 Mich App 628, 643; 907 NW2d 880 (2017). "The best indicator of that intent is the plain and ordinary language used." *Id*. "In construing a statute, the Court must read the language as a whole, giving meaning to each word in the context of the statute." *Id*. "If the language is unambiguous, then the language must be applied as written." *Id*.

It is undisputed that plaintiff's alleged injuries occurred while he was at the Hospital for the purpose of obtaining treatment for suspected COVID-19. Although plaintiff argues that the security staff was not providing medical care or treatment, MCL 691.1475 broadly applies to a health care provider or health care facility that provides health care services in support of this state's response to the COVID-19 pandemic and it is undisputed that plaintiff's presence at the Hospital was related to its provision of healthcare services for the COVID-19 pandemic, that plaintiff's interaction with the security staff occurred while he was in the tent area that was specifically set up by the Hospital in response to the COVID-19 pandemic, and that the reason for security's presence was that plaintiff was dissatisfied with the evaluation he had received for his suspected COVID-19 condition and he refused to leave the tent after being advised that he was being discharged. Moreover, MCL 691.1475 broadly applies to any injury "*by reason of those services*, regardless of how, under what circumstances, or by what cause those injuries are sustained," unless the provision of services constituted willful misconduct, gross negligence, or intentional and willful criminal misconduct or intentional infliction of harm. Accordingly, we reject plaintiff's argument that the act cannot apply to actions of the security officers.

The only exception to immunity that plaintiff discusses in his brief on appeal is gross negligence. The PHCIA defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1473(a). Plaintiff acknowledges that he did not plead gross negligence in his complaint, but argues that because defendants did not raise their immunity argument in their original motion for summary disposition, he did not have an opportunity to request that he be allowed to amend his complaint to plead gross negligence, and therefore, this Court should allow him to do so. MCR 2.116(I)(5) provides that when a party moves for summary disposition under MCR 2.116(C)(10), a court "shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.118(A)(2) provides that leave to amend "shall be freely given when justice so requires." Ordinarily, a motion to amend should be granted, and should be denied only for particularized reasons such as "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment." *VHS of Mich, Inc v State Farm Mut Auto Ins Co*, 337 Mich App 360, 373; 976 NW2d 109 (2021), quoting *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998).

Although plaintiff requests an opportunity to amend his complaint to plead gross negligence, he does not identify any facts that he believes would support an allegation of gross

-4-

negligence. "A party may not leave it to this Court to search for a factual basis to sustain or reject its position." *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 424; 576 NW2d 667 (1998). Because plaintiff fails to explain what facts would support a claim of gross negligence, he has not demonstrated that amendment of his complaint to plead gross negligence is justified.

Under the theory of respondeat superior, an employer may be held liable for the negligent acts of its employees while acting within the scope of their employment. *Laster v Henry Ford Health Sys*, 316 Mich App 726, 734; 892 NW2d 442 (2016). In order to prove a claim for negligence, the plaintiff must show (1) a duty, (2) a breach of that duty, (3) causation, and (4) damages. *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007).

Plaintiff agreed that he was required to leave the Hospital after he was told that he was discharged. At that time, the Hospital was facing a global healthcare crisis caused by the COVID-19 pandemic and was not admitting patients who did not require critical care. Although plaintiff was experiencing symptoms consistent with COVID-19, his condition was considered stable. Plaintiff did not have a ride readily available to transport him from the hospital, but he was allowed to remain in the tent for approximately two hours to arrange for a ride.

Plaintiff agreed that he had been discharged and was not going to be admitted to the Hospital, and that the officers initially spoke to him and encouraged him to leave. Indeed, plaintiff admitted that the officers seemed understanding, but told him there was nothing they could do. Although plaintiff claimed that the officers forcefully removed him, he also stated that he was not able to physically walk out of the tent on his own because of his symptoms and he felt weak. Plaintiff also agreed that there was a line of cars, maybe 20, waiting to be screened when he was being removed. Plaintiff explained that he fell when, once outside the tent, the officers who were assisting him let go and he lost his balance. Plaintiff admitted that the officers instructed him to get up, but he did not do so, explaining that he was unable to get up on his own, and after remaining on the ground for 15 to 20 seconds, some officers grabbed and forcefully moved him. Plaintiff agreed that he was "dead weight" when the officers dragged him because he could not assist them.

Although there was conflicting testimony regarding plaintiff's demeanor and conduct, whether plaintiff was able to walk on his own, whether plaintiff deliberately fell to the ground to impede the officers' efforts to remove him, and the manner and distance that plaintiff was moved after he fell to the ground, plaintiff's own testimony indicated that he was aware that he was not permitted to remain in the tent and that the officers verbally encouraged him to leave voluntarily prior to physically removing him. Plaintiff's testimony that he was too weak to walk on his own also indicates that the officers were justified in assisting plaintiff in leaving the tent. Plaintiff also admitted that the officers initially asked him to get up on his own and it was only after he remained on the ground for 15 to 20 second that the officers moved him. Plaintiff, who weighed approximately 300 pounds, also admitted that he was "dead weight" and unable to help the officers move him to a chair. Although the parties disputed the distance that plaintiff was moved and disputed whether plaintiff was in danger from the nearby line of cars of people waiting to be evaluated for COVID-19, even accepting plaintiff's claim that he was moved a distance of approximately 20 feet, it is undisputed that plaintiff was moved to a location where he could be placed in a wheelchair and that the officers assisted him in getting into the chair, and he was then taken to a hospital lobby where he was allowed to wait for his ride. Defendants submitted an

affidavit from a security expert, Nick Radu, who opined that the officers responded appropriately by attempting to first verbally deescalate the situation to gain compliance, and that their use of physical force was necessary and appropriate under the circumstances. These facts do not support a reasonable jury finding that the officers were negligent.

As the trial court observed, plaintiff did not provide any evidence to refute Radu's opinions. Instead, plaintiff argues that it was improper to consider Radu's affidavit because he did not have sufficient notice of what testimony Radu intended to offer at trial because defendants did not properly respond to his interrogatories. However, Radu was named as defendants' security expert on its witness list filed on December 21, 2021, and defendants' motion for summary disposition was not filed until October 2022. Therefore, plaintiff had plenty of notice of defendants' intent to offer a security expert. Plaintiff attempts to expand the record on appeal by submitting interrogatories and responses from defendants to argue that defendants did not reveal Radu's proposed opinions during discovery, and improperly waited until they moved for summary disposition to reveal the substance of Radu's proposed testimony. However, these materials were not submitted in the trial court, they may not be considered on appeal. This Court's review is limited to the record developed in the trial court and a party may not expand the record on appeal. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Further, plaintiff never challenged Radu's affidavit in the trial court and he may not raise this issue for the first time on appeal. This Court has no obligation to consider an issue that was not raised in the trial court. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2. Accordingly, we reject plaintiff's appellate challenge to Radu's affidavit.

For these reasons, we affirm the trial court's dismissal of plaintiff's claims asserting that the Hospital is liable for the security officers' conduct under a theory of respondeat superior.

## IV. PLAINTIFF'S NEGLIGENT HIRING, RETENTION, AND SUPERVISION CLAIM

To the extent that plaintiff asserted a direct claim against the Hospital for negligence in its hiring, supervision, or retention of the involved officers, we agree that the trial court did not err by dismissing this claim.

An employer may also be held directly liable for its own negligence in hiring, training, and supervising its employees. *Zsigo v Hurley Med Ctr*, 475 Mich 215, 227; 716 NW2d 220 (2006). A claim of negligent hiring or retention requires actual or constructive knowledge by the employer that would make the specific wrongful conduct perpetrated by the employee predictable. *Peterson Estate v Brannigan Bros Restaurants & Taverns, LLC*, 323 Mich App 566, 575; 918 NW2d 545 (2018).

The evidence, viewed in the light most favorable to plaintiff, does not support a conclusion that the Hospital knew or should have known that its security officers would unnecessarily cause harm to plaintiff when trying to remove him from the premises because plaintiff did not offer any evidence that the Hospital had a reason to know that any of the officers involved were unqualified or likely to engage in wrongful conduct with patients who refused to leave upon being discharged. Therefore, the trial court did not err by dismissing plaintiff's claim premised on the Hospital's alleged negligence in the hiring, supervision, or retention of the involved officers.

## V. PLAINTIFF'S NEGLIGENT-TRAINING CLAIM

Plaintiff also challenges the trial court's dismissal of his claim that the Hospital was negligent by failing to properly train its security staff on how to perform their job without unduly injuring plaintiff.

The trial court dismissed this claim because defendants submitted evidence showing that the Hospital's security officers were provided with training, which included training on how to deescalate situations involving disruptive or uncooperative patients, both when beginning employment and annually thereafter, which defendants' expert concluded was appropriate, and plaintiff failed to introduce any evidence to show that the training that was provided deviated from the standard of practice in the security industry. Plaintiff does not dispute the trial court's determination that he failed to demonstrate factual support for his negligent-training claim, but he argues instead that summary disposition of this claim was improper because he was prevented from supporting this claim because defendants failed to comply with his requests for discovery of training materials, personnel files and records, employee handbooks and policies, including disciplinary policies, and other relevant information. To the extent that plaintiff challenges the trial court's rulings on discovery requests, a trial court's decision on a motion to compel discovery is reviewed for an abuse of discretion. *Cabrera v Ekema*, 265 Mich App 402, 406; 695 NW2d 78 (2005).

A motion for summary disposition under MCR 2.116(C)(10) is generally premature if discovery has not been completed, unless there is no fair likelihood that further discovery will produce support for the nonmoving party's position. *Kern v Kern-Koskela*, 320 Mich App 212, 227; 905 NW2d 453 (2017). But a nonmoving party who opposes a motion for summary disposition cannot simply state that the motion is premature because discovery has not been completed; he must identify a disputed issue and support that issue with independent evidence, such as submitting affidavits to show the probable testimony in support of a position. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292-293; 769 NW2d 234 (2009). The court rules allow for broad, open discovery and parties are permitted to obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the lawsuit, MCR 2.302(B)(1). *Cabrera*, 265 Mich App at 406-407.

The record discloses that plaintiff was afforded extensive discovery, which included multiple depositions and the production of information related to the training of the Hospital's security officers, including more than 100 pages of training materials. Although plaintiff complains that defendants failed to comply with his many requests for discovery of other relevant information that could have supported his negligent-training claim, the record discloses that plaintiff's other discovery requests were the subjects of motions to compel that were addressed and decided by the trial court. In particular, the trial court directed the parties to submit supplemental briefs addressing plaintiff's requests for discovery of the Hospital's employee handbook or policies, including discipline policies, applicable to both the security officers and medical staff who were present on March 31, 2020. Further, the court agreed to conduct an *in camera* inspection of personnel files of the involved officers, including any discipline and complaints received from third parties. The court also agreed to conduct an *in camera* inspection of any information defendants had regarding the doctor who evaluated plaintiff on March 31, 2020, despite that she was not a Hospital employee. The court also ordered the Hospital to provide any

training materials, including materials from a third party, subject to a protective order. Additionally, the court ordered the Hospital to provide documentation of which security officers were on duty at the relevant time on March 31, 2020, an organizational chart of the chain of command for Cody Moore, the supervisorial officer on duty on that date, and any photographs or diagrams of the tent where the incident occurred. The court also permitted plaintiff to depose the Hospital's security director, William Leavens, a second time to further question him regarding the training materials that were provided to plaintiff.

In sum, contrary to plaintiff's claim on appeal that the trial court denied him basic discovery that prejudiced his ability to establish factual support for his negligent-training claim, the record discloses that the trial court ordered defendants to provide various requested information, allowed plaintiff to redepose Security Director Leavens after plaintiff received copies of training materials, agreed to conduct *in camera* reviews of other requested information, provided plaintiff access to third-party materials pursuant to a protective order, and permitted plaintiff to further address some of his discovery requests in supplemental briefing. Plaintiff does not address the trial court's discovery rulings or indicate whether he revisited some of his discovery requests in supplemental briefing as permitted by the trial court. Accordingly, he has not demonstrated that he was improperly foreclosed from discovering relevant information. Therefore, we reject plaintiff's claim that summary disposition of his negligent-training claim was improper because he was denied discovery of relevant information.

## VI. ASSAULT AND BATTERY

Plaintiff also argues that the trial court erred in dismissing his claim for assault and battery.

In civil law, an assault is "any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v Thomas*, 189 Mich App 110, 119; 472 NW2d 16 (1991). "A battery is the wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.*; see also *Tinkler v Richter*, 295 Mich 396, 401; 295 NW 201 (1940), and M Civ JI 115.02 (defining a battery as "the willful or intentional touching of a person against that person's will [*by another/by an object or substance put in motion by another person*]"). The intent necessary to prove battery is the intent to cause a harmful or offensive contact with another person, or knowing, with substantial certainty, that such contact would result. *Boumelhem v Bic Corp*, 211 Mich App 175, 184; 535 NW2d 574 (1995). The standard jury instructions for battery provide that the "[p]laintiff has the burden of proving that [*defendant willfully and intentionally touched the plaintiff against the plaintiff's will / defendant put in motion an object or substance that touched the plaintiff against the plaintiff's will*.]" See M Civ JI 115.21.

Here, the evidence does not support a claim for assault and battery based on plaintiff's testimony. According to plaintiff, he was intentionally touched by the officers when they initially removed him from the chair in the tent. At that time, plaintiff knew that he had been discharged and he agreed that he was required to leave, although he had nowhere to go. While plaintiff claimed that he was forcefully removed, he admitted that he was required to leave and that he needed assistance and was unable to walk on his own. Accordingly, the officers' physical touching

could not support a claim for assault and battery because it was done to assist plaintiff. While the officers intentionally touched plaintiff, it was not against plaintiff's will.

Again, solely according to plaintiff, after he left the tent, he fell when the officers removed their hands. Once on the ground, he told the officers that he could not get up. While the parties differ on what the officers did to move plaintiff after he fell, plaintiff agreed that the officers intervened after first instructing him to get up on his own and he was unable to do so. Plaintiff claimed that he was dragged across concrete and injured as he apparently was lifted by the officers into a wheelchair, and he denied that he was near any cars at that time. Even viewing the facts in the light most favorable to plaintiff, they do not support plaintiff's claim that the officers assaulted or battered him with an intent to cause him harm. The facts demonstrated that the officers assisted plaintiff by moving him from the tent area when he required assistance. After his fall, plaintiff was unable to move on his own. Whether the officers moved him to get him out of the way of traffic or because he was on the ground and unable to get up on his own, there is no evidence that the officers intended to harm plaintiff. There is no evidence that the officers dragged plaintiff for any reason other than to facilitate his removal from the area, whether to remove him from the property or to get him out of the way of those waiting in the vehicle line to receive COVID-19 screenings. Accordingly, the trial court did not err by ruling that there was no genuine issue of material fact to support plaintiff's claim of assault and battery.

Affirmed. Defendant having prevailed may tax costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Adrienne N. Young